Hoosier Stone Company v. McCain, Administrator.

No. 15,279.

HOOSIER STONE COMPANY v. McCAIN, ADMINISTRATOR.

PLEADING.—*Complaint.* — *Damages.* — *Alleging Fault of Defendant.* —*When Sufficient.*—*Co-employes, Fault of.*—Where in an action against a railroad company for damages, because of the negligence of such company, the complaint, among other things, alleged that the "defendant, by its agents and employes, acting under the orders of its superintendent and foreman," committed the wrongful act which caused the plaintiff's death, such allegation, in connection with the other averments of the complaint, is sufficient to charge the defendant with the wrongful act, and can not be construed to lay the fault with his co-employes.

SAME.—*Answer.—When in Confession and Avoidance.— When Not.—General Denial.—Affirmative Answer.—Sustaining Demurrer to.—When Not Error.*—An answer can not be in confession and avoidance where it does not concede color of right to recover, unless new affirmative matter is pleaded, such as payment, accord and satisfaction, and the like; and there is no error in sustaining a demurrer to a special paragraph of an answer in a case where the general denial is pleaded, and all the evidence admissible under the affirmative answer is admissible under the general denial.

PARTIES.—*Joint Tortfeasors.—Plaintiff May Elect to Sue any Number or All.*—Where suit is brought for injuries by reason of a negligent act of the defendant, the defendant can not, by setting up in his answer that there are, in relation to such alleged wrongful act, other joint *tortfeasors,* compel the plaintiff to make them parties to the action.

SPECIAL VERDICT.—*Failure to Cover All the Issues.—Effect.*—In this State, a special verdict is not bad, even if it does not cover all the issues in the case.

PRINCIPAL AND AGENT.—*Liability of Principal for Negligent Acts of Agent.—Stone Quarry.—Corporation.*—Where a superintendent of a stone quarry owned by a corporation, has charge of the business connected therewith, and is controlling the quarry, and is, in law and in fact, occupying the position of the master, and not that of a fellow-servant, the negligence of the superintendent is the negligence of the master.

SPECIAL VERDICT. — *Not Sufficient to Support a Conclusion of Law. — Ultimate Facts Required.*—If the special verdict does not contain such facts as require the conclusion, as a matter of law, that the defendant was guilty of culpable negligence, their place can not be supplied by intendments; and before a recovery can be had, the special verdict must contain ultimate facts upon which to base the conclusion of law.

EMPLOYER AND EMPLOYE.—*Degree of Care Required of Employer to Protect Employe.—Peculiar Danger to Employe Known to Employer.*—An employer

| | |
|---|---|
| 133 | 231 |
| 139 | 418 |
| 133 | 231 |
| 141 | 545 |
| 143 | 389 |
| 143 | 577 |
| 133 | 231 |
| 146 | 567 |
| 147 | 565 |
| 133 | 231 |
| 152 | 558 |
| 133 | 231 |
| 154 | 548 |
| 133 | 231 |
| 163 | 115 |
| 133 | 231 |
| 164 | 512 |
| e164 | 514 |
| 133 | 231 |
| 169 | 447 |

is under obligation to use reasonable care in making safe the place where, and the appliances with which his employe is to perform services; and if the employer knows of peculiar danger to the employe, in a place where he is directed to work, the employer is bound to do all that a reasonably prudent man could do to protect such employe; but an employer can not be held to be an insurer of his employe.

SAME.—*Perils Incident to Service.*—*No Recovery for.*—*Danger Created or Augmented by Co-employe.*—*No Recovery.*—Perils attendant upon the employe's business, upon the appliances necessarily used in conducting it, and the place where they were used, can not be considered dangers created by the master's breach of duty, and there can be no recovery for an injury attributable to such perils; nor will an action lie where the carelessness of co-employes augments or creates the danger which results in injury.

SAME.—*Negligence of Employer Not Presumed in Absence of Sustaining Facts.*—An employer can not be assumed to be guilty of negligence, until facts appear which authorize the conclusion that he wrongfully violated his duty.

From the Lawrence Circuit Court.

*M. F. Dunn* and *G. G. Dunn*, for appellant.

*J. W. Buskirk, J. Riley* and *J. Giles*, for appellee.

ELLIOTT, J.—The appellee, as the administrator of the estate of James A. McCain, deceased, seeks to recover damages for the death of the deceased, which, it is charged, was caused by the negligence of the appellant. The complaint alleges that the deceased was in the service of the appellant and was injured while in the line of his duty, without any fault on his part.

It is insisted by the appellant's counsel that the third paragraph of the complaint is bad, for the reason that it affirmatively shows that the injury to the appellee's intestate was caused by the negligence of a co-employe. We can not agree with counsel in the construction which they place upon the complaint, although it is true that the pleading is not entirely beyond criticism. The averment is that the "defendant, by its agents and employes acting under the orders of its superintendent and foreman," committed the wrongful act which caused McCain's death. This averment, taken in connection with others, must be

deemed sufficient, as it charges the negligent act to be that of the defendant. It is true that it is alleged that the act was performed through agents and employes, but this does not render it any the less the act of the appellant, since, as it is a corporation, it must do whatever it does through agents.

An answer containing several paragraphs was filed by the appellant. The first paragraph is the general denial, and the second and third paragraphs are regarded by us as argumentative denials. They do not confess and avoid, inasmuch as they do not give color of right to the plaintiff's complaint, but assert, in effect, that he never had any cause of action. An answer which does not concede color of right is not a plea in confession and avoidance. The answers we are considering really confess no material facts, save the relationship between the parties, and the happening of the accident. They fully deny, although in an affirmative form, that the injury was attributable to the negligence of the defendant. It is, indeed, difficult to conceive how an answer can be considered as in confession and avoidance, where, as here, the plaintiff's negligence is averred and the defendant's negligence expressly denied, unless new affirmative matter is pleaded, such as payment, accord and satisfaction, or the like. There is certainly no new matter of that nature in any of the paragraphs of the answer. It is settled that there is no available error in sustaining a demurrer to special paragraphs of an answer, in a case where the general denial is pleaded, and all the evidence admissible under the affirmative answer is admissible under the general denial. See authorities cited in Elliott's Appellate Procedure, sections 637 (669).

The fourth paragragh alleges that the intestate was injured upon a car furnished to the appellant by the Louisville, New Albany & Chicago Railroad Company, and that his injury was caused by a defective brake, which the railroad company negligently suffered to become insufficient

and dangerous. The prayer is that the plaintiff be compelled to make the railroad company a party to the action. There was no error in sustaining the demurrer to the paragraph. If, as the complaint alleges, the defendant was guilty of a culpably negligent breach of duty owing to its employe, the fact that another person was also negligent would not compel the plaintiff to make that person a party to the action, since it is an elementary rule that the plaintiff may sue one or more of several joint *tortfeasors*. Nor would the fact, conceding the answer to show such fact, that the negligence of the railroad company concurred with that of the appellant in producing the injury, defeat the action, nor require the presence of the railroad company as a party, inasmuch as a wrong-doer is not exculpated because the negligence of another concurred in producing the injury to the plaintiff. See authorities cited in Elliott on Roads and Streets, p. 451, 452, 631. If the negligence which caused the injury to the appellee's intestate was solely that of the railroad company, then, clearly enough, the appellant would not be liable; but the defense that there was no culpable negligence on the part of the appellant was admissible under the general denial, so that the concession that the answer shows that there was no negligence on the appellant's part would not lead to a reversal.

The contention of counsel that a *venire de novo* should have been awarded, because the special verdict does not find all of the facts, can not prevail. Even at common law a special verdict was not ill because it did not state all the facts, although it was ill if it did not embrace all the issues; but under the peculiar rule which prevails in this jurisdiction, a special verdict is not ill even though it may not cover all the issues in the cause. Authorities cited in Elliott's Appellate Procedure, section 759.

The material facts stated in the special verdict are, in substance, these: On the 14th day of June, 1888, James A. McCain was in the service of the defendant, and had

been in such service for three months prior to that date. For the purpose of moving and shipping stone quarried by the defendant, a railroad switch was constructed from the main line of the Louisville, New Albany & Chicago Railroad Company to the defendant's quarry. The switch was constructed by the defendant, and so constructed as to "make a considerable grade up to and into the quarry of the defendant." In "consequence of such grade, cars upon the part of the switch which was located in the quarry, if not carefully handled and guarded, would run, by reason of their own weight, with great force and speed out of the quarry and down toward the main line of the railroad." On the forenoon of the 14th day of June, 1888, the defendant caused to be placed on its switch four freight cars. Two of the cars were loaded with heavy blocks of stone, and were held in position on the switch by one brake and by "one chock, placed under the wheels, or trucks." About forty feet distant from the cars referred to, another car loaded with coal for use in the quarry was standing on the switch. On the day named, the appellee's intestate was, by the defendant's superintendent and employes, put to work unloading the coal from the car standing on the track. While engaged in this work, and while his back was toward the two cars loaded with stone, "the defendant, by its agents and employes, without giving any notice to plaintiff's intestate of their intention to do so, caused the two cars to move and run down the grade with speed, force and violence against the car upon which the plaintiff's decedent was at work." The collision threw the decedent from the car, and he was run over by one of the two moving cars and killed. At the time the two cars were put in motion, the defendant, its superintendent, agents, and employes, "knew that the decedent was engaged in unloading coal from the car, and gave him no notice or warning of danger until the moving cars were within forty feet of the one on which he was at work. There were two cars further in

the quarry than those which came into collision with the car
the decedent was engaged in unloading.   Between these
two cars and those which collided with the coal car there
was a space of nine or ten feet.   In order to complete the
loading of one of the cars which stood further in the quarry,
it became necessary to move it, and it was started down grade
toward the two loaded cars; and it was allowed, by the de-
fendant and its agents, to descend and come into collision
with the two loaded cars, and this threw the cars against
the one on which the intestate was at work.   On the day
of the intestate's death, the appellant's superintendent was
present at the quarry.   Edward Marsey was the "boss," or
foreman, of one of the defendant's derricks, and he was
ordered, by the superintendent, to load the cars, and pointed
out the stone which was to be placed on the cars.   The super-
intendent was present at the time of the accident, and there
was nothing to prevent him from observing all that was
done, and nothing to prevent him "from seeing and know-
ing the manner in which the cars were chocked or braced."
No inspection was made of the cars, chocks, braces or
brakes; nor was any examination made to discover whether
the brakes were properly set.   The noise made by the de-
cedent, while at work unloading the coal, rendered "him
less able to hear the approach of the cars or any signals,"
and other noises made by machinery in operation near by
increased the difficulty of hearing.   The decedent had no
knowledge of the condition of the cars standing on the
grade above the one on which he was at work, nor had he
any notice or knowledge of the intention to move such
cars, nor had he any notice of their movement, until about
the instant of the collision.

We find no great difficulty in reaching the conclusion
that the special verdict, although not beyond criticism,
shows that the superintendent stood in the employer's
place.   It sufficiently appears, upon a fair and reasonable
construction of the facts stated, that the superintendent

represented the corporation of which the appellee's intestate was an employe. He was placed in charge of the quarry and the connected business, and in conducting and controlling the quarry and the connected business; he was in law and in fact occupying the position of a master and not that of a mere fellow-servant. If he represented the master, his negligence, if he was guilty of negligence, was that of the employer. *Indiana Car Co.* v. *Parker,* 100 Ind. 181, and authorities cited; *Taylor* v. *Evansville, etc., R. R. Co.,* 121 Ind. 124, and authorities cited; *Capper* v. *Louisville, etc., R. W. Co.,* 103 Ind. 305, and cases cited; *Dayharsh* v. *Hannibal, etc., R. R. Co.,* 103 Mo. 570.

The question which we find some difficulty in solving is whether the special verdict states such facts as require the conclusion, as a matter of law, that the defendant was guilty of culpable negligence. If such facts are absent, their place can not be supplied by intendments, for it is a well-established law that special verdicts can not be so aided. *Dixon* v. *Duke,* 85 Ind. 434, and cases cited. See authorities cited in Elliott's Appellate Procedure, section 753, note 2, p. 709. Negligence can not be presumed, neither can it be inferred, unless such facts appear in the special verdict as conclusively authorize the inference of negligence as a matter of law. The fact that the appellant was negligent is indispensably essential to the existence of a cause of action. Proof of an occurrence resulting in injury to a person does not, by any means, authorize the inference of negligence on the part of the person whose act caused the injury. There may be personal harm to a plaintiff, and yet no actionable negligence on the part of the party who performed the act from which the injury resulted. Culpable negligence exists only where there is a wrongful breach of duty owing the person injured by the act of the defendant. See authorities cited in Elliott on Roads and Streets, pp. 636, 639, 649. The ultimate facts establishing negligence must appear in the special verdict, or the court can

not apply the law, for mere evidentiary matters are out of place and valueless in a special verdict. It is obvious from what has been said, that if the injury to the appellee's intestate resulted from an accident not attributable to a wrongful breach of duty on the part of the appellant, there can be no recovery.

The appellant was undoubtedly under a duty to use reasonable care to make safe the place where it required the intestate to perform service. An employer is bound to do all that reasonable prudence and care require in order to protect an employe directed to work in a place the employer knows is one exposed to peculiar danger. *Cincinnati, etc., R. W. Co.* v. *Lang,* 118 Ind. 579, and cases cited. But, although there is resting on the employer an obligation to use reasonable care to make safe the working-places and appliances, this duty never goes to the extent of making the employer an insurer, or of requiring him to exercise extraordinary care. If ordinary care is exercised by the employer, there can be no liability, although harm may come to his employes; but what is ordinary care depends chiefly upon the facts of the particular case. We refer to the cases which follow as sustaining the view we have asserted: *Indiana Car Co.* v. *Parker, supra; Rogers* v. *Leyden, supra; St. Louis, etc., R. W. Co.* v. *Valirius,* 56 Ind. 511; *Umback* v. *Lake Shore, etc., R. W. Co.,* 83 Ind. 191; *Indiana, etc., R. W. Co.* v. *Dailey,* 110 Ind. 75; *Rietman* v. *Stolte,* 120 Ind. 314.

In the case before us, it does not appear that the employer was guilty of negligence in omitting the duty to supply safe appliances, for there is nothing indicating a breach of duty in this respect. If there was negligence on the part of the employer it was in improperly using appliances not in themselves unsafe or inadequate. That the employer may be liable for negligently using safe appliances there can, of course, be no doubt; but the happening of an accident resulting in harm to an employe by no means

authorizes the conclusion that there was a failure to exercise ordinary care in the use of such appliances. If a farmer should block or lock a wagon at a point above an employe and the block or lock should give way, because some object was pushed or moved against it, and thus cause the wagon to run upon and injure his employe, negligence could not be imputed to him as a matter of law. This illustration serves our present purpose, which is to emphasize the statement that an accident and resulting injury are not of themselves sufficient to constitute a right of action. It is true that negligence may be inferred from facts, but where an employer is sought to be held liable there must be facts showing that the injury resulted from a failure to do what ordinary prudence required, or the doing of something which ordinary prudence required should not be done. It may not be necessary that epithets should be employed in characterizing the act alleged to be negligent, but it is necessary that facts be stated from which the nature of the act can be inferred.

We have carefully studied and closely analyzed the special verdict, and we can find no facts which authorize us to conclude that the appellant was entitled to recover. The verdict, it is true, states that there was "a considerable grade from the railroad up to the quarry," but it is not found ʳthat the grade was so steep that it was unsafe to propel cars over the switch or leave cars standing on it, so that it can not be said that the grade at which the switch was constructed caused the accident. It is also true that the verdict states that "in consequence of such grade, cars upon that part of the switch which was located in the quarry, if not carefully guarded and handled, would run, by reason of their own weight, with great speed and force out of the quarry and down toward the main track;" but ʾthere is nothing in this statement that authorizes the conclusion that ordinary care was not used in constructing the switch. For anything that appears, the employer may

have exercised a high degree of care in adopting the grade and in building the track and fitting it for use in conducting its business. But the verdict does not attribute the descent of the loaded cars to the steepness of the grade; on the contrary, it states, as the cause of their movement, that two cars in the interior of the quarry were put in motion and brought into contact with the loaded cars that ran against the car on which the decedent was at work. The verdict does not assert that there was negligence in moving the interior cars; all that it states is this: "That for the purpose of completing the loading of the partially loaded cars, it was, together with the one coupled with it, started down the switch toward the two cars loaded with stone; that they were allowed by the defendant and its agents to descend the switch and come into collision with the rear of the two cars loaded with stone." It is very evident that there is no fact authorizing it to be adjudged that there was negligence in moving or controlling the cars, since there is nothing at all justifying the assumption that the cars were not moved and controlled with ordinary care and in the mode the business of the appellant required. It can not, we are satisfied, be even plausibly contended that there was culpable negligence in any of the acts to which we have referred, so that the only statement which can, with a tinge of plausibility, be said to show negligence is that regarding the fastening or securing of the two cars loaded with stone, which were standing on the track below those in the interior of the quarry. Under the rule that an employer who places his employe in a place of peril is bound to use ordinary care to protect him, it must be adjudged that it was the employer's duty to use ordinary care to fasten or secure the cars loaded with stone. If it affirmatively appeared that the appellant did not use ordinary care in fastening or securing those cars, then there would, perhaps, be no great difficulty in holding that it was guilty of neg-

ligence, but this does not affirmatively appear. The statement of the verdict upon this point is this: "That such cars, after being loaded with large and heavy stone, were held in their position on the switch by one brake on the cars being set up and one chock placed under the wheels or trucks thereof." There is certainly nothing in this statement which authorizes the conclusion, as a matter of law, that ordinary care was not exercised in securing the cars from moving down the grade. As we are not informed by the verdict what the descent was, we can not even say that ordinary care required the use of more than one brake; but we know that one brake was used, and that, in addition, a chock was placed under the car wheels, but we do not know how large the chock was or what its character. We can not, for the sake of making the appellent a wrong-doer, assume that the chock was of insufficient size or made of improper material. The law, as long settled, requires us to assume that an employer is not guilty of negligence until facts appear which authorize the conclusion that he wrongfully violated his duty. If it were stated in the verdict that the chock was insufficient, or that one brake was inadequate, we should have a different case, but there are no such statements, nor any of kindred character.

The character of the grade of the switch, the peril attendant upon its use, and the fact that it was necessarily used in the appellant's business, were matters fully open to observation, and must have been known to the decedent, who was of mature age, and had been in the appellant's service for several months. As to these matters, he and his employer stood on common ground. *Griffin* v. *Ohio, etc., R. W. Co.,* 124 Ind. 326; *Louisville, etc., R. W. Co.* v. *Frawley,* 110 Ind. 18; *Brazil, etc., Co.* v. *Hoodlet,* 129 Ind. 327 (331); *Rietman* v. *Stolte, supra; Matchet* v. *Cincinnati, etc., R. W. Co.,* 132 Ind. 334; *Ballou* v. *Chicago, etc., R. W. Co.,*

54 Wis. 257. The perils of the service, which the employe knew were its incidents, were perils of which he assumed the risk. *Lake Shore, etc., R. W. Co.* v. *Stupak,* 108 Ind. 1; *Indianapolis, etc., R. W. Co.* v. *Watson,* 114 Ind. 20; *Louisville, etc., R. W. Co.* v. *Sandford,* 117 Ind. 265; *Brazil, etc., Co.* v. *Young,* 117 Ind. 520; *Rogers* v. *Leyden, supra,* and cases cited; *Louisville, etc., R. W. Co.* v. *Corps,* 124 Ind. 427, and cases cited; *Vincennes, etc., Co.* v. *White,* 124 Ind. 376.

The perils attendant upon the nature of the employer's business, upon the appliances necessarily used in conducting it, and the places where they were used, can not be considered as dangers created by the master's breach of duty, and, hence, an injury, if attributable to such perils, is not one for which an action will lie against the employer; nor will an action lie by an employe against the common master, where the carelessness of co-employes augments, or, indeed, creates the danger.

We can not avoid the conclusion that the verdict shows nothing more than an accident attributable to perils incident to the service in which the intestate voluntarily engaged. There is nothing indicating that he was not engaged at work required of him by his contract of employment; nor is there anything showing that he was taken from his usual working place and put in a position of unusual peril. It does, indeed, appear that his position was one of danger; but, so far as the verdict discloses, the danger was incident to the service he had voluntarily entered. The peril to which he was exposed was not attributable to the employer's culpable breach of duty, but to the nature of the service.

We have examined the entire record, and are satisfied that justice requires that a new trial be awarded, rather than that judgment be directed upon the verdict.

Judgment reversed, with instructions to award a new trial.

Filed October 8, 1892; petition for a rehearing overruled December 16, 1892.