Oscar Kalleck *vs.* Gardner G. Deering & others.

Suffolk.    March 7, 1894. — June 4, 1894.

Present: Field, C. J., Holmes, Knowlton, Morton, & Lathrop, JJ.

*Personal Injuries — Master and Servant — Seaman — Fellow Servant.*

The owners of a coasting vessel are not liable for injuries occasioned to a seaman on board the vessel while in port, and in command of the mate, through the breaking of a triangle on which the seaman was sitting and scraping the mast, where they have furnished proper materials for the construction of the triangle and the injury is caused by the negligence of the mate in constructing it and in ordering the seaman to use it.

Tort, against the owners of a vessel for personal injuries occasioned to the plaintiff while on board the vessel in harbor through the breaking of a triangle on which the plaintiff was sitting and scraping a mast.   Writ dated March 17, 1890.

At the trial in the Superior Court, before *Fessenden,* J., the jury returned a verdict for the plaintiff, and the judge, at the request of the parties, reported the case for the determination of this court.   The facts appear in the opinion.

*C. T. Russell, Jr.,* for the defendants.

*J. M. Browne,* for the plaintiff.

Holmes, J.   This is an action of tort for personal injuries suffered on board a coasting vessel while in harbor, through the breaking of a triangle on which the plaintiff was sitting and scraping a mast.   As the case comes before us, we must take it that the defendants did their duty in furnishing materials for the construction of the triangle, that the mate was in control of the vessel at the time, and that the cause of the plaintiff's injury was some negligence on the mate's part in constructing the triangle and in ordering the plaintiff to use it.   The question is whether the defendants are answerable for this conduct of the mate.

By the common law as understood in this State, the work of construction was not one of the matters which the defendants were bound at their peril to see done with reasonable care, and therefore, if those engaged upon it were fellow servants in their general standing and occupation, the plaintiff took the risk of

their negligence. They were not removed from the class of fellow servants for the time being by the nature of their occupation, to adopt the mode of expression which has been used. *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 209. *Moynihan* v. *Hills Co.* 146 Mass. 586. *Allen* v. *G. W. & F. Smith Iron Co.* 160 Mass. 557. But if the work had been done by the defendants in person, and they had done it negligently, they would have been liable, and it is argued that they are equally liable when the work is done by the master of the vessel, or by one who for the time being stands in his place. It is said that the master is not a fellow servant with the seamen, and therefore is not within the rule as to the risks assumed by the plaintiff, but that he is nevertheless an agent and representative of the owners, and that his negligence is their negligence. Even if it be said, as it has been said in some cases, that masters are not liable to servants for the negligence of others except when the law on grounds of policy imposes a personal duty on them to see certain precautions taken or reasonable care used; and if it be admitted therefore that the defendants could not be liable for negligence in the construction of the triangle on the part of the master, whether a servant or not, any more than when the same work was done by the seamen; (*Quinn* v. *New Jersey Lighterage Co.* 23 Fed. Rep. 363; *The Queen,* 40 Fed. Rep. 694, 696; *Loughlin* v. *State,* 105 N. Y. 159, 162; *Baltimore & Ohio Railroad* v. *Baugh,* 149 U. S. 368, 385;) still, ordering the plaintiff to use the faulty triangle was an act belonging to the superior officer as such, and it might be that as to that a different rule would apply.

Looking at the reason given for the exception to the general liability of masters for servants, the last suggestion cannot prevail. If the sailor takes the risk of a negligent injury to his person from a fellow sailor, there is equal reason to say that he takes the risk of a negligent command. A command is a transitory act which the employer has no chance to supervise. It is not like a permanent condition of land or machinery, or the abiding incompetence of an employee. See *Flynn* v. *Campbell,* 160 Mass. 128, 130. If the defendants have been guilty of no personal negligence, and the plaintiff does take the risk of the negligence of some persons with whom his work will bring him into contact, the question whether the negligence of one of those

persons is within or outside of the risks assumed is not a matter of names or dignities. That is too well settled to need the citation of cases. *Moody* v. *Hamilton Manuf. Co.* 159 Mass. 70. The question is what he must be taken to have contemplated when he went into the employment. The chances of negligence on the part of a superior employed in the common business are as obvious as in the case of one of a lower grade, and therefore when the duty is not personal to the employer the same rule applies, whatever the degree of the negligent employee. *Baltimore & Ohio Railroad* v. *Baugh*, 149 U. S. 368, 384. These considerations apply, and have been applied by common law courts, to the captain of a vessel, and it has been said that he is a fellow servant within the meaning of the rule. *Hedley* v. *Pinkney & Sons Steamship Co.* [1892] 1 Q. B. 58. *Loughlin* v. *State*, 105 N. Y. 159. So in this Commonwealth as to a mate. *Benson* v. *Goodwin*, 147 Mass. 237. Without considering what may be the best mode of expressing it, we agree with the result of these cases.

But it is argued that a different doctrine obtains in the admiralty, and that we ought to follow the law which would be administered by the courts especially constituted for the affairs of seamen. For this argument it does not matter precisely where the vessel was. If the accident happened within the body of the county the admiralty jurisdiction would not be excluded ; *Waring* v. *Clarke*, 5 How. 441 ; *The Commerce*, 1 Black, 574 ; and if upon the high seas, that of the common law is not to be denied. *Percival* v. *Hickey*, 18 Johns. 257. *Wilson* v. *Mackenzie*, 7 Hill, (N. Y.) 95, 97.

The case most relied on is *The A. Heaton*, 43 Fed. Rep. 592, followed by *The Frank & Willie*, 45 Fed. Rep. 494, and *The Julia Fowler*, 49 Fed. Rep. 277. Compare *Morse* v. *Slue*, 1 Vent. 238 ; *S. C.* 3 Keb. 135 , 1 Molloy de Jure Marit. book 2, c. 2, § 2. If the American cases meant that the admiralty courts had worked out the liability of the ship for the acts of the captain from their own peculiar principles, it might be necessary to inquire whether the personal liability of the owner necessarily followed from the same premises, and if it did, why the common law should yield to the admiralty rather than the admiralty to the common law. But it hardly is to be expected that different

views of the substantive law should be enforced by the same judges sitting in different courts. In *The A. Heaton*, Mr. Justice Gray did not declare a doctrine peculiar to the admiralty, he merely deferred to a decision upon the common law from which he himself had dissented, which is inconsistent with the cases in this Commonwealth, and which has been explained by a later decision of the court which rendered it. *Chicago, Milwaukee, & St. Paul Railway* v. *Ross*, 112 U. S. 377. See *Baltimore & Ohio Railroad* v. *Baugh*, 149 U. S. 368. Under these circumstances the Circuit Court cases do not seem to us a sufficient reason for departing from the common law because the accident happened on board ship. Moreover, it is very plain that we cannot adopt the admiralty law as a whole. We cannot divide the damages when the plaintiff has been guilty of contributory negligence, as was done in *The Julia Fowler*. *The Max Morris*, 137 U. S. 1. See *Dowell* v. *General Steam Navigation Co.* 5 El. & Bl. 195, 206.                                              *Verdict set aside.*