## DILL v. MARMON.

[No. 20,482.   Filed January 25, 1905.   Rehearing denied April 18, 1905.]

|       |     |
|-------|-----|
| 164   | 507 |
| f168  | 230 |
| f168  | 352 |
| f168  | 689 |
| 164   | 507 |
| 169   | 30  |
| 170   | 376 |
| 164   | 507 |
| 171   | 623 |

1. MASTER AND SERVANT.—*Individual Master.*—*Common Law.*—An individual master is liable for negligence only by the rules of the common law, the employers' liability act applying only to railroads and other corporations, except municipal.   p. 511.

2. SAME.—*Delegation of Duty.*—*Foreman.*—A duty owed by the master to the servant can not be delegated, and if entrusted to a foreman, a failure to perform it will render such master liable.   p. 512.

3. SAME.—*Foreman.*—*Liability for Negligence.*—The master is not liable for the act of a mere foreman in directing servants working under him, where the master has furnished a safe place and proper appliances.   p. 515.

4. SAME.—*Superior Servant.*—*Negligence.*—The fact that a servant is superior in authority does not *per se* establish the fact that such servant is a vice-principal, and therefore establish the master's liability for such servant's negligence where the master has otherwise performed his duty.   p. 516.

5. SAME.—*Scope of Employment.*—*Outside Work.*—*Liability.*—Assisting in pushing a car by hand was not outside of the scope of employment of a servant whose duty it was to help move cars to and from the scales at a flour mill, to such an extent as to cause the master to be charged with the risk of injury thereof, even though the servant had never before been called upon to do that particular work.   p. 521.

6. SAME.—*Unsafe Place.*—The rule of "safe place" does not include every new combination of circumstances occurring in the details of an employment.   p. 522.

7. MASTER AND SERVANT.—*Foreman.*—*Assumption of Risk.*—A servant in obeying the commands of a foreman in the moving of cars on a switch and who is directed by such foreman to push a car by hand, by reason of which he is injured, assumes such risk.    p. 522.

8. SAME.—*Negligence of Master.*—A negligent command emanating from the master or his representative, causing injury to the servant, or a permanent defect in the place or appliances causing injury, renders the master liable, and the servant may assume in such cases that by following the master's orders he will not be exposed to unknown perils, but his right of recovery is always for negligence of the master. p. 522.

9. SAME.—*Ordinary Employment.*—*Duty of Master.*—The master is not liable for injuries to his servant where the character of the work is not essentially dangerous, when he has used proper care to employ competent servants, and provided a safe place and proper appliances. p. 523.

10. SAME.—*Foreman.*—*Master's Liability.*—The individual owner of a flour mill is not liable for the negligence of his foreman who worked with his men, who was not a head of a department, who exercised no function belonging to the master, but was superintending and assisting in loading, weighing and handling cars.    p. 524.

11. TRIAL.— *Evidence.*— *Conflict.*— *Peremptory Instructions.*— In an action by a servant against his master for damages for personal injuries caused by an alleged defective car puller, where the evidence is conflicting as to the existence of such alleged defect, it is improper to instruct the jury to return a verdict for the defendant.    p. 524.

From Superior Court of Marion County (63,032); *John L. McMaster,* Judge.

Action by John Dill against Daniel W. Marmon. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court under subdivision 2, §1337j Burns 1901, Acts 1901, p. 565, §10, subd. 2. *Reversed.*

*Frank E. Gavin, Theo. P. Davis* and *James L. Gavin,* for appellant.

*Elmer E. Stevenson* and *Edward H. Knight,* for appellee.

GILLETT, J.—Appellant instituted this action to recover for an injury to his person alleged to have been caused by the negligence of appellee. It is unnecessary to make any particular statement of the issues. Upon the close of the

evidence introduced on behalf of the parties, the court instructed the jury to return a verdict in favor of appellee. The record presents the question as to the propriety of this action upon the part of the court.

There is a question in the case as to whether a certain appliance was defective; but, laying this matter aside for the present, it may be said that, after giving appellant the benefit of all disputed questions upon the evidence, the following facts are shown by the bill of exceptions: On July 4, 1900, appellee was, and for some time prior thereto had been, operating a flour mill, and an elevator in connection therewith, at Noblesville, Indiana. Appellee did not give the business his personal attention. One Anderson was the general manager thereof, and the evidence shows that he occasionally gave directions to the workmen. Under him was one Haines, who had charge of the loading, weighing and handling of cars used by appellee, as well as of the exchange business in connection with the mill. So far as shown, he had but three or four men under him. Appellant was employed by Anderson about the middle of May, 1900. He was told that he would be subject to the instructions of Haines. Appellant worked under Haines in loading cars, and in moving them on a siding used in connection with the plant, but when there was no work of that kind to do he was given general, or, as he describes it, roustabout, work upon the premises. The mill was about 150 feet north of the elevator. The siding was on the east side of the mill and of the elevator, and when cars were loaded at the mill they were pulled down to or just beyond a track scales which was in front of the latter building. From one to three cars were handled per day. The men would sometimes push an empty car between the two points, but the method of taking a loaded car from the mill to the elevator was by means of an appliance in the elevator known as a "car puller." The power was transmitted from this appliance to the car by means of a rope. The car puller would

draw the car at the rate of forty-five feet per minute. The rope passed out of the elevator through a window, which was so situated that by attaching the rope to the rear truck of the car it could be pulled until the rear end of it was just south of the scales. Anderson had explained to appellant at different times that it was necessary for a man to stand in the window to signal the man in charge of the car puller when to shut off the power. Haines ordinarily did this, but he frequently designated some one of the men to do it. On quite a number of occasions appellant had done this. A short distance south of the scales two tracks came into the siding—one from the Lake Erie & Western railroad, and the other from the Chicago & Southeastern railroad. Appellant had helped to push cars between the mill and the elevator, and had assisted in pulling cars out onto the intersecting tracks to the south. Haines ordinarily worked with his men. He possessed no power to hire or discharge them. Appellant was forty-two years old, and had had a reasonable amount of general experience about machinery. He admits that he was thoroughly familiar with the surroundings outside the mill and elevator. During the night of July 3, 1900, two cars were pushed into the siding, by the Lake Erie & Western Railroad Company, for appellee's use. The next morning the north car was loaded at the mill. The other car stood partially on the scales, but the greater part of it was to the south thereof. It was necessary to pull the loaded car down to the scales to weigh it, and then to get the empty car to the north. Haines, appellant and another man started to do this work. The rope was fastened to the rear truck of the loaded car, and Haines stood at the window to stop the car when it stood upon the scales. It seems to have been appellant's expectation, since it was the practice, that a chock would be put under one of the wheels when the car reached the proper position. Haines said to the two men, as the car was approaching: "When that loaded car comes down and bumps that empty

car, you keep it going down the switch." Appellant testified that his understanding of the order was that when the two cars got far enough apart so that they could get in between them, and before the empty car had lost its momentum, they were to get in between them and push. The two men undertook to do so, and, as appellant was pushing, he slipped, and one of his feet was caught by the flange of a wheel of the loaded car. Both appellant and his associate cried out. Their cries were heard by a man inside, but the car continued.to move for a minute or a minute and a half, during which time appellant's foot slipped along the rail for a little distance, but the outcome of it was that his foot was crushed. Appellant did not look back after stepping between the cars. He supposed that the loaded car would be stopped. He had never been called on before to help push a car that had been started by a car behind it.

1.   Assuming that Haines was guilty of negligence in giving the order, and in failing to signal to stop the car puller the moment he was apprised that appellant's foot was caught, it is to be determined whether Haines occupied such a relation to the work that appellee should be held responsible for the consequences which ensued. If there is any liability in this case, it must be placed on a common-law ground, since appellee is an individual. The extreme doctrine concerning who are fellow servants, which was declared in *Columbus, etc., R. Co.* v. *Arnold* (1869), 31 Ind. 174, 99 Am. Dec. 615, is no longer the law of this State. There have been innovations upon the doctrine as declared in that case in the direction of a more liberal rule in favor of injured employes, but not to the extent of permitting a recovery on the ground suggested. Appellant's counsel cite upon this branch of the case the following authorities: *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181; *Taylor* v. *Evansville, etc., R. Co.* (1889), 121 Ind. 124, 6 L. R. A. 584, 16 Am. St. 372; *Nall* v. *Louisville, etc., R. Co.* (1891), 129 Ind. 260; *Louisville, etc., R. Co.* v. *Hanning*

(1892), 131 Ind. 528, 31 Am. St. 443; *Hoosier Stone Co.*
v. *McCain* (1892), 133 Ind. 231; *Island Coal Co.* v. *Swag-
gerty* (1903), 159 Ind. 664.

2.  *Indiana Car Co.* v. *Parker, supra,* was a case where
a duty of the master was neglected, in failing to furnish a
safe place to work.  It is therein very clearly pointed out
that, as respects those duties which the master owes to the
servant, they can not be delegated, and that therefore the
omission of the servant to whom their performance is en-
trusted is necessarily the omission of the master.  The case,
however, gives no recognition to the view that rank or
superiority in service on the part of a commanding servant
is a controlling factor in the solution of the question as to
liability.  On the contrary, it was said: "The rules which
these decisions so firmly establish as the law of this State
may be thus stated:  First.  The master is not liable to a
servant for injuries resulting from the negligence of a fel-
low servant engaged in the same general line of duty, where
the negligent act is performed in the capacity of servant.
Second.  Servants engaged in the same general line of duty
are fellow servants although one may be a superior, and
the others may be subordinate servants, under his immedi-
ate direction and control."

In *Taylor* v. *Evansville, etc., R. Co., supra,* it was held
that the company was liable to a servant who was injured
while acting under a special order of the master mechanic,
owing to a negligent act done by the latter.  The case does
not rest upon the theory that the master mechanic occupied
a position analogous to that of a foreman, but on the propo-
sition that, in view of the full authority which he had over
the men, machinery and work, he stood for the master in
the particular circumstances.  The following extract from
the opinion will sufficiently show the effect of the decision:
"We do not affirm that an employe, with authority to com-
mand, may not be a fellow servant; on the contrary, we
hold that one having authority to command may still be

a fellow servant, but we hold, also, that where the position is such as to invest the employe with sole charge of a branch or department of the employer's business, the employe, as to that branch or department, may be deemed a vice-principal while engaged in giving orders or directing their execution."

In *Nall* v. *Louisville, etc., R. Co., supra,* a servant was called out, with a large force of men, to save a bridge, which a freshet threatened with destruction. While laboring in the waters, as he was directed to do by an employe who had been entrusted solely with the command of the work of endeavoring to save the bridge, the servant was killed by reason of a negligent order given by the man in charge of the work as to the movement of a locomotive. It was held that the master was liable. In the opinion on the petition for a rehearing it was said: "One who is placed in charge of a force of men engaged in any of those occupations, whose duties are limited to carrying on the work, or directing it, whether actively assisting therein or not, and who is invested with no authority, or charged with no duty in furnishing places or appliances for the work, or in the employment or retention of employes, is himself usually a mere co-employe. His duties require him to use, or superintend and direct the using of places and appliances, and to control employes furnished by the master. If, however, he is given additional authority, and is charged with the duty of furnishing places to work, and appliances for the work, and is authorized to employ and discharge operatives, he is, as to such things, not a co-employe, but speaks and acts as the master. One who is placed in unrestricted control of a given department by his master, and is clothed with the power to command the services of the other employes, not simply to see that they faithfully discharge the duties ordinarily pertaining to their employment, and in the usual places, with the usual appliances provided therefor, but has

the authority to. require of them the performance of other duties, in other places and with other appliances, who has authority to call the sectionmen, the bridge builders, the freight handlers, and the laborers from the gravel-pit and gravel train, and require of all that they unite in averting the threatened destruction of a bridge, is certainly in such matters more than a mere fellow servant with those subject to his control."

In *Louisville, etc., R. Co.* v. *Hanning, supra,* it was held that the railroad company was liable where a servant was killed while engaged in the repair of a car on a track used for switching; it appearing that the servant was called from his regular work, and was engaged in the repair of the car at the special command of the general foreman of the company's repair shops, and that such foreman had neglected to put out flags, as it was alleged that it was his duty to do, and as decedent supposed had been done.

In *Hoosier Stone Co.* v. *McCain, supra,* the facts were that while two cars were being loaded with stone they were started, and, running down a grade, caused the death of a servant who was unloading coal from a car which was standing further down the track. The superintendent was present and had directed the loading of the cars above, and the jury found that there was nothing to prevent him from seeing that the cars were not sufficiently stationed. In deciding the case this court said: "It sufficiently appears, upon a fair and reasonable construction of the facts stated, that the superintendent represented the corporation of which the appellee's intestate was an employe. He was placed in charge of the quarry and the connected business, and in conducting and controlling the quarry and the connected business; he was in law and in fact occupying the position of a master and not that of a mere fellow servant. If he represented the master, his negligence, if he was guilty of negligence, was that of the employer."

Although it is not cited by counsel for appellant, we

càll attention, in passing, to the case of *Louisville, etc., R. Co.* v. *Heck* (1898), 151 Ind. 292. It was there held that the railroad company was liable for the negligence of a train dispatcher in sending an improper order, it appearing that he was authorized to send orders in the name of the division superintendent and had done so in the instance in question. The ruling was based on the ground that the dispatcher was authorized to act for one who was a vice-principal, and on the further ground that the master's business was of such a character that superintendence upon its part was necessary in the operation of its trains.

The case of *Island Coal Co.* v. *Swaggerty, supra,* may be said, in a general way, to belong to that class of cases to which *Taylor* v. *Evansville, etc., R. Co., supra, Nall* v. *Louisville, etc., R. Co., supra, Louisville, etc., R. Co.* v. *Hanning, supra,* and *Hoosier Stone Co.* v. *McCain, supra,* belong. It is a case where a servant was injured who had gone into a dangerous place pursuant to the special command of the master's sole representative below ground, and where the latter had been guilty of negligence in failing to stop the descent of an elevator.

3. Notwithstanding the view which this court has sanctioned as to the liability of the master to a servant for the negligence of an employe who is over the whole service, or over a large department of it, yet it has never given any recognition to what is termed the "superior servant doctrine." On the contrary, it has always maintained that the master was not liable for the act of a mere foreman in giving directions concerning the work to a servant working under him, where the place and appliances furnished by the master were proper. *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181, and cases cited; *Indianapolis, etc., R. Co.* v. *Johnson* (1885), 102 Ind. 352; *Pittsburgh, etc., R. Co.* v. *Adams* (1886), 105 Ind. 151; *Justice* v. *Pennsylvania Co.* (1892), 130 Ind. 321; *New Pittsburgh Coal, etc., Co.* v. *Peterson* (1894), 136 Ind. 398, 43 Am. St. 327;

*Bedford Belt R. Co.* v. *Brown* (1895), 142 Ind. 659; *Robertson* v. *Chicago, etc., R. Co.* (1896), 146 Ind. 486; *Kerner* v. *Baltimore, etc., R. Co.* (1897), 149 Ind. 21; *Hodges* v. *Standard Wheel Co.* (1899), 152 Ind. 680; *Island Coal Co.* v. *Swaggerty* (1903), 159 Ind. 664; *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460. In the case last cited it was pointed out that the master's duty relative to furnishing a safe place to work does not require, in undertakings which may properly be entrusted to a foreman and the men under him, that the master shall guard the men against those transient dangers which from time to time occur in the progress of the work. In *Southern Ind. R. Co.* v. *Martin, supra,* it was said: "The train and every appliance that the appellant had furnished may be presumed to have been proper, and it may be presumed that it had no notice that Mathieu was not a proper man to entrust with the duty of acting as foreman in the performance of the particular work. The whole matter was one of detail that the foreman and the men might properly be permitted to attend to in their own way."

4. While it may be that a different rule applies where the master or—what amounts to the same thing—his personal representative is present and is guilty of negligence; and while we admit that a master's business may be so complicated and dangerous that the very carrying on of some department of it may require the master's superintendence, in addition to his ordinary duties, yet, as applied to those classes of work which may properly be left to the direction of a foreman, we can not, in view of principle, and of the iteration and reiteration in our cases that superiority in rank or authority to direct does not *per se* make a servant a vice-principal, consent to the proposition that the master is liable for the negligence of the foreman in directing the work, where the master has otherwise performed his duty.

Dill *v.* Marmon.

In the course of an article written by Judge Cooley, in 2 South. Law Rev. (N. S.), 124, it was stated: "It has been seen that the superior position of the negligent servant, as that of a foreman, conductor, etc., is not regarded as affecting the case. But a foreman is not necessarily or usually, perhaps, entrusted with any large share of the master's discretionary authority. Neither is the conductor of a train of cars, except as to the particular duty of taking it safely to its destination. His duty may be and probably is less responsible than that of the telegraph operator who directs his movements and those of others in charge of trains on the line; and if the conductor is to be regarded as principal for some purposes, so should the operator be for others. But this would suggest questions and distinctions that could only be confusing, and would preclude the possibility of any settled rule whatsoever. It would seem that the law could go no farther than to hold the corporation liable for the acts and neglects of the officer exercising the powers and authority of a general superintendent; but that for these it ought to respond to its servants, as for its own acts or neglects. But this in no way affects the general rule which requires of any employer, whether corporate or not, to employ suitable servants, and to make use of safe tools, machinery, etc., or at least, to take care that there is no negligence in procuring them."

The opinion of the Supreme Court of the United States concerning the superior servant doctrine, at least in recent years, is shown by the following quotation from the opinion in *Baltimore, etc., R. Co.* v. *Baugh* (1893), 149 U. S. 368, 389, 13 Sup. Ct. 914, 37 L. Ed. 772: "It may safely be said that this court has never recognized the proposition that the mere control of one servant over another in doing a particular piece of work destroys the relation of fellow servants, and puts an end to the master's liability [*sic*]. On the contrary, all the cases proceed on the ground of some breach of positive duty resting upon the master, or

upon the idea of superintendence or control of a department. It has ever been affirmed that the employe assumes the ordinary risks incident to the service; and, as we have seen, it is as obvious that there is risk from the negligence of one in immediate control as from one simply a co-worker."

In *Northern Pac. R. Co.* v. *Hambly* (1894), 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009, it was said: "To hold the principal liable whenever there are gradations in rank between the person receiving and the person causing the injury, or whenever they are employed in different departments of the same general service, would result in frittering away the whole doctrine of fellow service. * * * In a large majority of cases there is some distinction either in respect to grade of service, or in the nature of their employments. Courts, however, have been reluctant to recognize these distinctions unless the superiority of the person causing the injury was such as to put him rather in the category of principal than of agent, as, for example, the superintendent of a factory or railway, and the employments were so far different that, although paid by the same master, the two servants were brought no farther in contact with each other than as if they had been employed by different principals."

An illustrative case upon the subject in hand is *Northern Pac. R. Co.* v. *Peterson* (1896), 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994, where it was said: "This boss of a small gang of ten or fifteen men, engaged in making repairs upon the road wherever they might be necessary, over a distance of three sections, aiding and assisting the regular gang of workmen upon each section as occasion demanded, was not such a superintendent of a separate department, nor was he in control of such a distinct branch of the work of the master as would be necessary to render the master liable to a co-employe for his neglect. He was in fact, as well as in law, a fellow workman; he went with

the gang to the place of work in the morning, stayed there
with them during the day, superintended their work, giving
directions in regard to it, and returned home with them in
the evening, acting as a part of the crew of the hand-car
upon which they rode.   The mere fact, if it be a fact, that
he did not actually handle a shovel or a pick, is an unim-
portant matter.   Where more than one man is engaged in
doing any particular work, it becomes almost a necessity
that one should be boss and the other subordinate, but both
are nevertheless fellow workmen."

In *Howard* v. *Denver, etc., R. Co.* (1886), 26 Fed. 837,
it was stated by Mr. Justice Brewer: "To make one as the
controller of a department properly the representative of
the master, his duties should be principally those of direc-
tion and control.   He should have something more than the
mere management of machinery; he should have subordi-
nates over whose various actions he has supervision and
control, and not a mere assistant to him in his working
of machinery.   He should have control over an entire
department of service, and not simply of a single machine
in that service.   He should be so lifted up, in the grade and
extent of his duties, as to be fairly regarded as the *alter ego*
—the other self—of the master."   For a general discus-
sion of the question as to who is a vice-principal see note to
*Stevens* v. *Chamberlin* (1900), 51 L. R. A. 513; note to
*Mast* v. *Kern* (1898), 75 Am. St. 580.   See, further, on the
question in hand, 2 Labatt, Master and Serv., chapters 28,
29, 31, 32.

Where groups or gangs of men are employed in the per-
formance of work, it is, in the nature of things, impossible
to bend their energies to the accomplishment of the ultimate
purpose without intelligent direction upon the part of one
mind.   To secure this end, and in many circumstances to
protect the men themselves, they must work under a fore-
man.   His work, although it consists in giving directions,
is not only essential, but, as his commands set in motion the

forces which may lead to the injury or death of those under him, there is an especial reason why the employes should consider the intelligence and prudence of the man in control. If there is any philosophy in the general rule, its purpose must be clearest in the case of a co-service of this character, since the workmen have ordinarily a better opportunity than the master to determine how much of discretion the foreman possesses. These considerations, and especially the want of opportunity upon the part of the master to supervise every command, should prompt the courts to exculpate him where there has been no negligence in the performance of a master's duty, as in negligently hiring or retaining an unfit foreman. In *Ross* v. *Walker* (1891), 139 Pa. St. 42, 21 Atl. 157, 23 Am. St. 160, it was said: "No employer could bear the burden of legal responsibility for every blunder or neglect on the part of each and all of his employes. The fact that one employe is more skillful than another, or has had greater experience, and is so deferred to by others, does not change his relation to his employer or to his fellows. Nor does a difference in rank or grade of service change the rule. When the character of the business requires it, the master is as much bound to provide his workmen with a reasonably competent foreman as to provide them with tools, but in either case his liability ceases when he has made a suitable selection."

As was observed by Mr. Justice Holmes, in *Halleck* v. *Deering* (1894), 161 Mass. 469, 37 N. E. 450, 42 Am. St. 421: "A command is a transitory act which the employer has no chance to supervise. It is not like a permanent condition of land or machinery, or the abiding incompetence of an employe. See *Flynn* v. *Campbell* [1893], 160 Mass. 128. If the defendants have been guilty of no personal negligence, and the plaintiff does take the risk of the negligence of some persons with whom his work will bring him into contact, the question whether the negligence of one of those persons is within or outside of the risks assumed is

not a matter of names or dignities. That is too well settled to need the citation of cases. *Moody* v. *Hamilton Mfg. Co.* [1893], 159 Mass. 70. The question is what he must be taken to have contemplated when he went into the employment. The chances of negligence on the part of a superior employed in the common business are as obvious as in the case of one of a lower grade, and therefore when the duty is not personal to the employer the same rule applies, whatever the degree."

5. Giving command as to the proper manner of performing the work is not ordinarily one of those absolute personal functions which the master alone can exercise. *Doughty* v. *Penobscot Log, etc., Co.* (1884), 76 Me. 143; *Hofnagle* v. *New York, etc., R. Co.* (1874), 55 N. Y. 608. A vice-principal is one who represents the master in the discharge of those duties which the master owes to his servants. *Thacker* v. *Chicago, etc., R. Co.* (1902), 159 Ind. 82, 85, 59 L. R. A. 792; *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181; *New Pittsburgh Coal, etc., Co.* v. *Peterson* (1894), 136 Ind. 398, 43 Am. St. 327; *Robertson* v. *Chicago, etc., R. Co.* (1896), 146 Ind. 486; *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460. The appellant was engaged in the business of loading and moving cars, and in general, or, as he termed it, roustabout, work. His duties made him familiar with the operation of moving cars by means of the car puller, and of pushing them by hand, and he was familiarly associated with the foreman whom he charges with negligence. While it is true that appellant claims that he had never before been called on to perform a precisely similar task, yet it is clear that the duty of pushing the empty car to the south was comprehended within his general employment. The direction from the foreman to push the car before it lost the momentum which it had acquired was not such a change in his business as to authorize him to proceed at the master's

risk. *Stuart* v. *New Albany Mfg. Co.* (1896), 15 Ind. App. 184. If every new situation in matter of detail were to be held to constitute a new service, the general rule would be frittered away, for an accident ordinarily grows out of a new combination of circumstances.

6. The case, so far as the matter of direction is concerned, is one where the place was rendered unsafe in the execution of the details of the service; and, since every place where an accident happens is at least momentarily unsafe, it can not be said that that fact alone made it the duty of the master to be present in person or by representative to protect the servant. *Southern Ind. R. Co.* v. *Harrell, supra.*

7. Appellant, in our opinion, assumed the risk that the foreman might give a negligent command relative to the handling of cars upon the siding. But even if we were to concede that the command of Haines related to a matter so essentially new that the appellant might fairly contend that he is not debarred of a recovery under the rule, *"volenti non fit injuria,"* yet it does not follow that because he may not have assumed the risk he proceeded at the master's risk.

8. A case like this is to be broadly distinguished from one where the command comes from the master or his special representative, or where the condition is of such a permanent character as to place or appliances that the master is in default in failing to warn the servant. In such cases the latter has a right to assume, at least ordinarily, that in following a special direction he will not be carried into an extraordinary and unapprehended peril. But it is nevertheless a rule of law that a servant can not recover compensation of a master unless he can show that his injury was occasioned by the negligence of the master or of his representative. *Quincy Mining Co.* v. *Kitts* (1879), 42 Mich. 34, 3 N. W. 240; *Ross* v. *Walker, supra;* 4 Thompson, Negligence (2d ed.), §3758.

9.   Of course, the master may be thrown into default notwithstanding all the care that he may have taken to perform his duties, as respects those obligations which are personal to himself; but, as applied to an employment not essentially dangerous, it does not admit of doubt that, having taken due care to furnish and maintain a proper place, sufficient appliances and proper servants, he may entrust the carrying out of the details of the work to those servants. The very denial of the superior servant doctrine, which this court has steadily frowned on, involves the proposition that the master is not always required to be present while the ordinary duties of the employment are being carried on. In such a case it is not the master's voice which directs the servant to perform the particular act, and the employe knows that in the nature of things there has been no opportunity upon the part of the master to examine and consider whether the act is dangerous, so there is no basis for the assumption that the servant has undertaken the peril at the master's risk.   As applied to the question in hand, we may well adopt the following language, used by the supreme court of Massachusetts in *Flynn* v. *Campbell, supra:* "The actual danger of the moment was due to a transitory act. Under the circumstances, the rule as to instructing inexperienced hands about the hidden dangers of their employment does not apply."

It were idle to declare the rule of law to be that a master who has fully discharged every duty which belongs to him may entrust the details of the execution of a part of the business to a foreman, if we also held that whenever an accident happened from a negligent order given by the foreman the master is to be charged with a default because he did not protect the servant from the transitory peril.   If it be the law that the ordinary work of an employment not essentially dangerous may be carried on by means of a foreman who directs the servants in their work, the proposition

becomes a practical matter to employers, and this assurance should not be nullified by converting the foreman into a vice-principal whenever an accident happens.

10. We have before us a case of a foreman who worked with his men; who was not, in the sense of the law, at the head of a department, but was simply over two or three men; who was entrusted with no function which belonged to the master, but was superintending and assisting in the loading, weighing and handling of cars, and who had a man over him. We deem it clear that the master was not liable for any negligence upon the part of his foreman, either in giving the order or in failing to stop the car afterwards.

11. There remains another question in the case. It appeared without dispute that the car puller principally consisted of two drums; that, in pulling a car, the load was on the lower drum, and that the other drum was used to take up the slack. Appellant offered evidence tending to show that a finger clutch was used to throw the appliance out of gear; that it was very difficult to operate the clutch when the load was heavy, thereby occasioning serious delay in stopping cars. One witness testified that he had been compelled to pound with a heavy timber in shutting off the power; that he had complained to the general manager about the clutch a year and a half before; that it had not been changed, and that the appliance would have operated promptly if a friction clutch had been substituted. Another witness testified that he had on a number of occasions given signals at the window to the man in charge of the appliance; that it would take from half a minute to a minute to stop, and that in some instances the car would pull over the chock. Appellant testified that he did not know that there was anything wrong with the machinery. Appellee offered evidence which tended to show that the clutch was in order, and also that by raising a lever the slack could be loosened on the upper drum, with the result that the rope would no longer wind about the lower drum. He also offered evidence tend-

ing to show that Haines gave the signal to stop as soon as he heard the outcry, and that the man in charge of the appliance threw it out of gear and raised his slack lever, throwing off the power instantly. In rebuttal appellant introduced evidence of a declaration of the man who was in charge of the power, made after the accident, to the effect that there was something wrong with the machinery, and that he was not able to stop it.

The evidence introduced by appellant on his case in chief, while not wholly conclusive that the appliance could only be stopped by the finger clutch, tended to show, when taken in connection with the evidence offered as to the delays in stopping, that the appliance was defective. In attempting to meet this, appellee altogether relied upon the testimony of his own witnesses, all of whom were in his employ. In addition to this, it was pertinent for the jury to consider why the car did not stop for a minute or a minute and a half after the outcry was heard by a man who was in the elevator. Of course this is giving appellant the benefit of disputed questions, but it is our duty to do this in considering whether the trial court invaded the province of the jury in giving a peremptory instruction to find for appellee. We think that there was at least some evidence tending to show a defective condition of the machinery, and that it was error to take that theory of the case from the jury. *Diezi* v. *Hammond Co.* (1901), 156 Ind. 583.

Judgment reversed, with an instruction to grant a new trial.