## THE FULTON.

(District Court, N. D. California. February 15. 1906.)

### No. 13,480.

1. MASTER AND SERVANT—INJURY OF SERVANT—LIABILITY OF MASTER.

The cause of the breaking of a rope sling used in hoisting lumber from the hold of a vessel, resulting in the injury of a seaman, *held*, under the evidence, not due to the unsound condition of the rope, which might have rendered the vessel liable for the injury, but to the unusual strain put upon it by the catching of the load upon the hatch coaming, for which the vessel was not liable.

2. SAME—UNSAFE APPLIANCES—DEFECTS DUE TO WEAR.

While it is the duty of a master to furnish reasonably safe appliances for the use of his servants, it is not his duty to repair defects arising in the daily use of an appliance not permanent in its character, such as a rope sling used in loading and discharging a vessel, which is liable to become worn and unsafe at any time, and if the owner supplies the workmen with new and sound rope which they may use in repairing or renewing the slings, when required, the vessel is not liable for the injury of a seaman through a failure to use such material, even though it is due to the negligence of an officer, who in such case is not the agent of the owner, but a fellow servant.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 252, 253.]

In Admiralty. Suit in rem by seaman to recover for personal injuries.

F. R. Wall, for libelant.

C. H. Wilson, for defendant.

DE HAVEN, District Judge. The libelant was a seaman on the schooner Fulton, and while engaged as such was seriously injured by the parting of a rope sling, used at the time in discharging a cargo of lumber from the hold of the vessel. This is an action in rem to recover the damages resulting to the libelant from the injury so sustained by him.

The libel alleges that the rope from which the sling was made was unsound and defective, that the owners of the vessel were guilty of negligence in furnishing such unsound sling, and that the place where libelant worked was rendered unsafe by its use. It appears from the evidence that for two or three days prior to the accident, the vessel's cargo, consisting of lumber, was being discharged, and that in hoisting the lumber from the hold six or eight slings were

used; that on the day prior to the accident members of the crew, including the libelant, complained to the first officer that the slings were unsafe; and thereupon two or three new slings were made and put in use, but the sling which broke was one of the old ones. This sling when it parted, was carrying a load of boards, weighing from 1,200 to 1,500 pounds. The load caught in the hatch coaming while being hoisted from the hold by a steam winch. The winch was immediately stopped and the libelant was trying to free the lumber so that it could be hoisted through the hatchway when the sling broke; the lumber which it carried falling upon him.

I think the accident was due to the excessive strain which was put upon the sling when the lumber caught in the hatch coaming. The fact that the strain was almost immediately released by the stopping of the winch is not opposed to this supposition. The rope was doubtless weakened by the unusual tension to which it was subjected before the winch was stopped, and stopping the winch would not restore its strength. The sling was made of 3½ inch Manila rope, and the evidence shows that it was able to carry under usual conditions, the load which it had on at the time of the accident. From an inspection of the part which was received in evidence, and from the testimony of the experts who were examined as witnesses, I am satisfied that the sling was not unsound, or unfit for discharging lumber from the vessel. It was not new, but it was not so much worn that a man of ordinary prudence would have considered it unsafe to use in discharging cargo. This fact is shown, not only by the testimony of the master and mate of the vessel, and by the witnesses Sellers and Rice, who may be regarded as experts upon the subject of the strength and quality of ropes, but also by the evidence of Carlson, the seaman who put the sling around the lumber. The fact that a prudent man would not have considered the sling unsafe is sufficient to defeat the present action, for the master is not an absolute insurer of the safety of the servant. He is only required to use ordinary care for the protection of the servant. "The master is not bound to provide the very best materials, implements, or accommodations which can be procured, nor those which are absolutely the most convenient or most safe. His duty is sufficiently discharged by providing those which are reasonably safe and fit." Shearman & Redfield on Negligence, § 195; Sappenfield v. Main St. R. R. Co., 91 Cal. 48, 27 Pac. 590; The Chico (D. C.) 140 Fed. 568.

2. But I am of the opinion that the action cannot be maintained, even if it should be assumed that the sling was unsound, and that the mate was guilty of negligence in permitting it to be used. It is undoubtedly the general rule that it is the duty of the master to furnish his servant with appliances which are reasonably safe and fit for use in the prosecution of the servant's work, but the rule itself is not applicable to those appliances which are not of a permanent character, requiring renewal and repairs from time to time because of daily wear and tear, and which repairs and renewals are to be made by the servant as a part of his work. In such a case the master has discharged his duty by supplying proper and suitable

materials with which to replace or repair the appliance when it has become unfit for further use. An application of this principle will be found in the case of Johnson v. Boston Towboat Co., 135 Mass. 209, 46 Am. Rep. 458. In that case the servant sued to recover damages for an injury which resulted to him from the negligence of a fellow servant in using an unsound rope, instead of a new one, which had been supplied by the master. In holding that the master was not liable for the injury, the court said:

"The defendant was under obligation to its servants to use reasonable diligence to maintain in suitable condition the appliances furnished for their use. If the defendant exercised that diligence, and provided suitable means for keeping its apparatus in proper condition, and employed competent servants to see that the means were properly used, it had fulfilled its duty. It was incidental to the use of the apparatus—a part of its contemplated use—that the rope should be occasionally renewed; and when the defendant had furnished the means for that renewal, and employed Moore to make the renewal whenever needed, it employed him as a servant, and not as agent or deputy."

In Cregan v. Marston et al., 126 N. Y. 568, 27 N. E. 952, 22 Am. St. Rep. 854, the question of the master's liability to respond in damages for the death of one of his employés killed by the breaking of a "fall," attached to a derrick, and used at the time of the accident in hoisting buckets of coal from the hold of the vessel was presented for decision. The court in its statement of the case said:

"The lengths of rope used in the derrick were called 'falls.' * * * Everybody connected with the business knew the consequences of excessive use and the necessity of frequent changes of falls, but at varying and uncertain periods of time. The fall which was sound and safe in the beginning of a morning's work might become frayed and dangerous before night, and, if it did, would become so before the eyes of all the workmen dependent upon it for its use. And that is true because the proof given by the plaintiff shows clearly that the rope which is sound originally becomes pulpy internally only when use has affected it externally."

Then, after referring to the fact that the defendant kept on hand an adequate supply of "falls," which would have been supplied if called for, the court held that the servant was not entitled to recover for his injuries, saying:

"It is undoubtedly true, as we have often said, that it is the duty of the master to keep a machine or appliance in order, and that he cannot delegate the duty so as to escape responsibility. But that is a general rule and has its qualifications. One of those is that it is not the master's duty to repair defects arising in the daily use of the appliance, for which proper and suitable materials are supplied, and which may be easily remedied by the workmen, and are not of a permanent character, or require the help of skilled mechanics."

The same rule was recognized in Burns v. Sennett & Miller, 99 Cal. 363, 33 Pac. 916, and Kalleck v. Deering, 161 Mass. 469, 37. N. E. 450, 42 Am. St. Rep. 421, in which latter case it was held that the owners of the ship were not liable for an injury to a seaman caused by the negligence of the mate in constructing the triangle in which the seaman was seated when engaged in scraping a mast.

The reason underlying the rule established by the cases above referred to is that, in the nature of things, the master is not expected

to look after mere matters of detail in the prosecution of the general work which is committed to the employé. It is well known that appliances such as ropes, used in taking on and in discharging cargo, become worn and unsafe from use, that it is necessary such appliances should be changed from time to time as occasion requires; that the necessity for substituting new for old may arise in the absence of the owner, but is always open to the observation of those who use them, and the matter of substitution is therefore left to the discretion and judgment of the servant employed in the general work of taking on or discharging cargo, and is regarded as a part of the details of that work, in relation to which the owner owes no positive and personal duty to the crew beyond supplying the vessel with suitable materials from which to repair or renew unsafe appliances, and the exercise of proper care in selecting competent officers, whose duty it is to see that such renewals are made when necessary. The evidence in this case shows that the owners had supplied the vessel with a sufficient quantity of new rope from which necessary slings could have been made, and if it should be conceded that the mate was guilty of negligence in not discarding all of the old slings when complaint was made to him, and at once supplying their places with others spliced from the new rope on hand, still such negligence is not that of the owner of the vessel, but is to be deemed the negligence of a fellow servant, for the consequences of which the owner is not responsible.

The libel is dismissed.