Filed January 22, 1896.

---

No. 17,465.

THE DIAMOND PLATE GLASS CO. *v.* DeHority, Admr.

143  331
L156  182

143  381
163  357

MASTER AND SERVANT.—*Personal Injury of Servant.*—*Contributory Negligence.*—*Assumed Risk.*—A laborer working near a fence against which a tall panel of fence projecting two feet or more above and below the permanent fence, has been set up nearly in an upright position, cannot recover against his employer for the fall of such panel upon him, caused by the wind, where he had as good an opportunity to know of the danger as the master could have had.

SPECIAL FINDINGS.—*Conflict.—General Verdict.*—Special findings must be treated as true and the general verdict as untrue in case of an irreconcilable conflict between them.

From the Henry Circuit Court.

*Bell & Purdum, Blacklidge & Shirley, Goody-koontz & Ballard, Brown & Brown* and *C. M. Greenley,* for appellant.

*Perkins & Behymer* and *M. E. Forkner,* for appellee.

McCABE, C. J.—The appellee, as the administrator of one Perry Whiteman, deceased, sued the appellant in the Madison Circuit Court for damages for the alleged negligence of appellant in causing the death of said Whiteman. The venue of the cause, on the appellant's application, was changed to the Henry Circuit Court, where a trial of the issues formed by a general denial, by a jury, resulted in a verdict and judgment for the plaintiff for $4,000 over appellant's motions for judgment *non obstante veredicto,* and for a new trial. The errors assigned here call in question these several rulings and the action of the court in overruling appellant's demurrer to the complaint.

It appears from the complaint, that appellant was a corporation operating a plate glass factory in the city of Elwood, Madison county, Indiana, and that the deceased was engaged in working for appellant as a common laborer about the appellant's factory building; that on September 3, 1892, said Whiteman was engaged in said employment, and under the direction of said company, shoveling dirt and removing accumulated *debris* from the grounds of said company in the immediate neighborhood of a high paling fence, and while so employed a large, heavy, wooden fence, then situate on the grounds of said company near where said Whiteman was at work, fell on and killed him; that prior to that time the officers and agents of appellant had caused a panel of fence to be taken up out of the ground from its

premises and stood it up by a permanent fence in an upright position on said premises, without prop or support, and left it standing on a balance, so that a slight push or current of wind would easily force it to fall over toward where said Whiteman was working for the said company, well knowing that the position of said fence was dangerous to the life of any one working at the place where decedent was so engaged; that he was ignorant of the temporary and dangerous character of said fence; that said panel of fence was about eighteen feet long; that but little force from the direction of said permanent fence was required to throw it over toward where said decedent was working when he was injured by its fall aforesaid; that on said day said defendant, by its officers and agents, was present during the entire day, and well knew the dangerous character of said fence, and did nothing to prevent the same from falling over or to render it safe, but carelessly and negligently allowed it to remain in its dangerous position until it fell on said Whiteman and fatally injured him; that believing and supposing that such premises were then in a safe condition, said Whiteman continued to work under the orders of said defendant company, without any warning or notice of danger on account of the position of said leaning panel until the same fell over and killed him, as aforesaid, without any fault on his part.

The answers to interrogatories propounded by the defendant to the jury show that the fence panel was placed in the position complained of on the 2d day of September, 1892, the day the injury complained of happened, at about half after eight o'clock in the morning; that the appellee's intestate could have seen the panel of fence and the position in which it was standing long before the same fell upon him, by ordinary care, if

he had looked; that when it fell upon him, he was shoveling dirt from five to eight feet west of the bottom of the panel leaning east against the fence; that he was a common laborer in the employ of the defendant, and was forty-two years of age; that the posts of the leaning panel were about eight feet long, and the top of it extended above the permanent fence about two feet, the posts of the leaning panel extended below the paling about two and one-half feet, and it was two and one-half feet from the bottom of the permanent fence to the bottom of the posts of the leaning panel at the time and prior to the falling of said panel upon decedent; that the fall of the said panel was caused by wind, the day being otherwise calm, though the generally prevailing wind, such as was blowing at all that day, was from the west; that the fence panel in question was placed in the position it occupied immediately before the injury to the decedent by the employes of the defendant, who were under the general supervision of the same foreman under whom plaintiff's decedent was working on the day he was injured, without any instructions from appellant as to the manner in which it should be leaned against said permanent fence.

These facts are such as cannot be reconciled with the general verdict under any supposable state of the evidence. Three facts essential to the support of the general verdict are involved in and found by it, namely, that appellant had been guilty of negligence in placing the panel of fence in its position leaning against the permanent fence; that the decedent had not been guilty of contributory negligence in its fall upon and injury to him; and that the risk was one that he did not assume. All of these facts are indispensable to the maintenance of appellee's cause of action. *Cincinnati, etc., R. R. Co. v. Grames,* 135 Ind. 44; *Pennsylvania Co. v. Meyers,*

*Admx.*, 136 Ind. 242; *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31; *Cincinnati, etc., R. W. Co.* v. *Hiltzhauer*, 99 Ind. 486; *Ohio, etc., R. W. Co.* v. *Hill, Admx.*, 117 Ind. 56; *Chicago, etc., R. W. Co.* v. *Hedges, Admx.*, 118 Ind. 5; *Louisville, etc., R. W. Co.* v. *Stommel*, 126 Ind. 35; *Indiana, etc., R. W. Co.* v. *Hammock*, 113 Ind. 1; *Cincinnati, etc., R. W. Co.* v. *Howard*, 124 Ind. 280 (8 L. R. A. 593).

In *Pennsylvania Co.* v. *Meyers, Admx., supra*, it was said: "Appellee's cause of action does not consist alone of injurious consequences resulting from appellant's negligence, but superadded to that must be established that no act, or omission to act, on the part of decedent contributed materially to the production of the injuries complained of. While this contribution to the injury, by act or omission to act, on the part of the injured person, may, under the general rule, be a defense, its absence is as much a part of the cause of action as the negligence of the defendant, and, like it, must be affirmatively alleged and proven. *Ohio, etc., R. W. Co.* v. *Hill, Admx., supra; Chicago, etc., R. W. Co.* v. *Hedges, Admx., supra; Louisville, etc., R. W. Co.* v. *Stommel, supra; Indiana, etc., R. W. Co.* v. *Hammock, supra; Cincinnati, etc., R. W. Co.* v. *Howard, supra*, and cases there cited."

Here the answers to the interrogatories show that the injured servant had as good an opportunity to know of the danger to which he was exposed, as the master or any one else, and the means of avoiding such danger were as much within his reach as within the reach of the master or anybody else, and yet he worked on without looking or observing or heeding the same. *Bedford Belt R. W. Co.* v. *Brown*, 142 Ind. 659; *Coal Co.* v. *Estievenard*, (O.) 40 N. E. Rep. 725.

VOL. 143—25

In *Griffin* v. *Ohio, etc., R. W. Co.,* 124 Ind. 326, at page 328, this court said: "Where the danger is alike open to the observation of all, both the master and [the] servant are upon an equality, and the master is not liable for an injury resulting from the dangers of the business." To the same effect is *Vincennes Water Supply Co.* v. *White,* 124 Ind. 376. The law requires that men shall use the senses with which nature has endowed them, and when, without excuse, one fails to do so, he alone must suffer the consequences; and he is not excused, where he fails to discover the danger, if he made no attempt to employ the faculties nature has given him. *Brazil Block Coal Co.* v. *Hoodlet,* 129 Ind. 327; *Lake Shore, etc., R. W. Co.* v. *Pinchin,* 112 Ind. 592; *City of Plymouth* v. *Milner,* 117 Ind. 324; *Stewart, Admx.,* v. *Pennsylvania Co.,* 130 Ind. 242; *Pennsylvania Co.* v. *Meyers, supra.*

In *Day* v. *Cleveland, etc., R. W. Co.,* 137 Ind. 206, it was said: "In a case where the servant is one of mature age and experience, as in this case, the law never imposes the duty on the master of becoming eyes and ears for his servant, where there is nothing to prevent the servant from using his own eyes and ears to avoid danger. * * * We need not stop to inquire whether the foreman's act was the act of the principal, and binding on the appellee." To the same effect is *Prothero* v. *Citizens' Street R. W. Co.,* 134 Ind. 431. According to these principles the facts found by the answers to interrogatories are absolutely inconsistent and irreconcilable with the general verdict under any supposable state of the evidence; because the general verdict finds that the decedent did exercise due care for his own safety, and, therefore, was not guilty of contributory negligence. While the answers to interrogatories find that he did not exercise due care for his own

safety, and was, therefore, guilty of contributory negligence, we cannot, by the greatest stretch of the imagination, conceive of any state of evidence that could reconcile these two conflicting findings so that they both might stand, as appellee's learned counsel contend they may. If they could be reconciled, it is the duty of the court to uphold the general verdict. *Ridgeway* v. *Dearinger*, 42 Ind. 157; *Indianapolis, etc., R. R. Co.* v. *Stout, Admr.*, 53 Ind. 143; *Byram* v. *Galbraith*, 75 Ind. 134; *Shuck* v. *State, ex rel.*, 136 Ind. 63. But no evidence could possibly show that appellee's intestate was both guilty of and free from contributory negligence in the casualty resulting in his death.

It will not do to say that the decedent was not guilty of contributory negligence because he had no means of knowing that the fence—standing as it was, with the wind blowing as it was from the west—would not be liable to fall west contrary to the way it was leaning, and contrary to the way the wind was blowing. If he could not reasonably foresee and apprehend that a sudden whirlwind would or might come blowing the contrary direction, and therefore foresee and guard against the danger that did actually come, then how could the other employes of the appellant—even conceding without deciding that the foreman of them and decedent, under whose orders the panel of fence was placed in the position, were not fellow-servants—foresee and guard against the danger? If it was not negligence in appellant to fail to foresee and guard against the danger, neither was it negligence in the other employes of the appellee to fail to foresee and guard against the danger. And in that event appellant would be free entirely from negligence, and hence not liable for the damages resulting. "There is no liability for an injury inflicted by one person upon another, even

though the injured person be free from fault, if the cause of the injury was unusual and one which reasonable and careful human foresight could not have foreseen as such, and which, under the circumstances, such care and foresight could not have guarded against. Such an injury, without any want of ordinary care upon the part of the person inflicting it, is considered an inevitable accident." 16 Am. and Eng. Ency. of Law 396. So that if the decedent could by reasonable and careful human foresight have foreseen and guarded against the injury complained of, he was guilty of contributory negligence, and his administrator cannot recover, because of his failure to guard against it; or it may be said in that case, if he worked on without objection or complaint, that he assumed the risk as one of the dangers incident to the business. *Ames, Admr., v. Lake Shore, etc., R. W. Co.*, 135 Ind. 363. And if neither could by care and prudence have foreseen and guarded against the danger, then neither party could be held guilty of negligence, and in that case it must be held that the danger was one of the risks and hazards of the business or employment which the deceased assumed as incident thereto. *Mad River, etc., R. R. Co. v. Barber*, 5 O. St. 541; s. c. 67 Am. Dec. 312. If he could not by such reasonable and careful human foresight have foreseen and guarded against the injury, and for that reason was not guilty of negligence, then for the same reason appellant's other employes who caused the panel of fence to be set up where it was when it fell on him could not by such human foresight have foreseen and guarded against the dangerous consequences which ensued, and hence the appellant's servants were not guilty of negligence in placing it there. So that it inevitably follows from any possible view of the particular facts found that either the decedent was guilty of

contributory negligence, or the appellant was not guilty of negligence, or that he assumed the risk in his contract of employment, either of which is a direct contradiction of the general verdict. In case of such conflict the statute requires us to treat the special finding as true, and the general verdict to the extent of such conflict as untrue; and to hold that the former shall control the latter, and give judgment accordingly. Burns R. S. 1894, section 556; R. S. 1881, section 547; *Pennsylvania Co.* v. *Meyers, Admx., supra.* It results that the special findings so far destroy the general verdict as to show that the appellee has no cause of action against the appellant. The uncontradicted evidence which is in the record makes a stronger case against the right of recovery than the answers to interrogatories.

We do not wish to be understood as holding that the act of the co-employes of the decedent in rendering his working place unsafe without direction from or sanction by the common master, rendered the appellant liable to the charge of negligence. See *Hoosier Stone Co.* v. *McCain, Admr.*, 133 Ind. 231; *Reed* v. *Browning*, 130 Ind. 575.

But it is insisted that we cannot consider the motion for judgment on the special findings in answer to interrogatories, nor the motion for a new trial, because the two motions were both filed before either had been acted on, and being inconsistent they destroy each other. In support of this contention counsel cite *Nixon* v. *Downey*, 49 Iowa 166, and *Stone* v. *Hawkeye Ins. Co.* (Iowa), 28 N. W. Rep. 47. The latter case only holds that the motion for a new trial being filed after the overruling of the motion for judgment, and within three days after the return of the verdict, the right to file the motion for a new trial had not been waived. In the

other case it was held that "The motion for a judgment and the motion for a new trial are, of course, inconsistent, so far as the action is concerned which they are intended to invoke. In asking the court to sustain the motion for judgment, the defendant virtually asked the court not to sustain the motion for a new trial. That was certainly a waiver of the motion for the time. We think it should have the same effect as withdrawing it from the files."

Conceding, without deciding, that the Iowa Supreme Court correctly stated the rule, it does not help appellee any, because it only extinguishes the motion for a new trial, leaving the motion for judgment on the special findings in full force and vigor. In the case before us the record shows that the motion for a new trial was filed first, and immediately thereafter, and before action on such motion, the motion for judgment was filed. The most that could be said of the filing of the latter motion was to ask the court not to grant the former. Whether it had the effect to actually withdraw the motion for a new trial from the record, we need not and do not decide. The inconsistency of the two motions consisted only in the relief they asked; they both alike disaffirmed the general verdict. There is authority for saying that the two motions may be pending at the same time. 2 Elliott Gen. Prac., section 995; *Habersham* v. *Wetter*, 59 Ga. 11; *Pope* v. *Latham*, 1 Ark. 66; *Jewell* v. *Blandford*, 7 Dana (Ky.) 473. And if there is nothing to the contrary, it will be presumed that they were ruled upon in their proper order. Elliott Gen. Prac., *supra*; *Water, etc., Co.* v. *Gildersleeve*, 4 N. Mex. 171. See also *Bank* v. *Bayliss*, 41 Mo. 274.

But we do not place our decision upon this ground, because, as before observed, it is unnecessary to the determination of the case.

Board of School Com. of the City of Indianapolis *v.* Center Tp. *et al.*

The facts found in answer to the interrogatories having shown that the plaintiff had no cause of action, the court erred in overruling appellant's motion for judgment thereon, notwithstanding the general verdict.

The judgment is reversed, and the cause remanded, with instructions to the circuit court to sustain the defendant's motion for judgment in its favor on the answers to special interrogatories, notwithstanding the general verdict.

Filed May 3, 1895; petition for rehearing overruled January 22, 1896.