KERNER, ADMINISTRATRIX, *v.* THE BALTIMORE AND
OHIO SOUTHWESTERN RAILWAY COMPANY.

[No. 18,094.   Filed November 23, 1897.]

MASTER AND SERVANT.—*Personal Injuries.—Fellow Servant.—Vice Principal.*—Where servants of a railroad company were engaged in placing a driving spring in a locomotive, and in doing so one of them, in order to force such spring into the saddle, struck same with a heavy iron, the foreman holding a torch that the blow might fall in the right place, thereby forcing the spring into place with such force as to throw a lever, bar and cold chisel, which were held by other servants in assisting to force the spring in place, and strike and kill one of such servants, the company is not liable, as the participation in the work by the company's foreman was as that of a fellow servant and not as a vice principal.

From the Martin Circuit Court. *Affirmed.*

*J. S. Pritchett* and *Reiley & Emison,* for appellant.

*W. H. De Wolf, Gardiner & Gardiner* and *E. W. Strong,* for appellee.

HACKNEY, J.—This was an action for damages in the alleged negligent killing of John J. Kerner, a machinist in the employ of the appellee's predecessor,

The Ohio and Mississippi Railway Company. The trial court instructed the jury, upon the close of the appellant's testimony, to return their verdict in favor of the appellee, and that ruling presents the only question for review.

The evidence without conflict establishes the following facts: The decedent and five other machinists were employed in the company's round house, in Washington, in January, 1892, where said decedent had been employed for several years. The machinists, as to the character of the work they should perform from day to day, were directed by one Marion, and on the day in question one of their number, Brenner, was directed by Marion to put into a locomotive a new driving spring, in the place of one broken. Pursuant to said direction, Brenner, with his helper, raised, with jackscrews, the frame of the locomotive, took out the broken spring, set the new one in place, and were endeavoring to pull the equalizer down to key it onto one end of the spring, and were unable to get it down far enough to admit the key into the slot of the equalizer, but had gotten the point of a cold chisel and the sharpened end of a short bar of iron into the slot to secure the equalizer at the point to which it had been drawn. The spring seemed too stiff for the two men to overcome it so far as to admit the key, and Brenner was directed to call other men to his assistance. When he had resumed the effort, Kerner and others, including Marion, participated, and by means of steel hooks placed upon the equalizer, and in the lower end thereof an iron bar was inserted, and constituted a lever upon which the men applied the weight of their bodies. This, though a proper means, was not efficient, and, upon closer inspection, it was discovered that the spring was not down in the saddle by near three-quarters of an inch, whereupon one of the machinists,

Von Beren, proposed to strike the spring with a heavy iron and force it into the saddle. This suggestion was followed by the act, Marion holding the torch that the blow might fall at the right point, and the spring was suddenly driven into place with such force as to throw the lever, the short bar, and the cold chisel out of place with violence. One of these struck Kerner upon the head, from the effects of which he died before a physician could be summoned. It appeared that the company had supplied a device, known as a spring puller, the use of which, together with the method of pulling down the equalizer with a lever, were the ordinary methods employed. It appeared also that Kerner had frequently replaced broken springs in locomotives, understood the work, and such work was, in part, that for which he was employed; that such work was constantly required of the machinists in said round house, the company having in use more than sixty locomotives, and such repairs were made daily.

That the act resulting in the injury and death of Kerner was without care for the safety of anyone engaged in the work then in hand is not questioned by counsel, and is without doubt in our minds.

It is insisted by the counsel for appellee that the negligent act was that of a fellow servant of Kerner, and one to which Kerner's negligence contributed. On the other hand, appellant's learned counsel contend that the act was that of a vice principal, Marion, and that it was in violation of the master's duty to supply a safe place to work, and safe machinery and tools with which to perform the work.

Concerning the latter contention, counsel do not advise us wherein the company was negligent, either as to place to work, or the appliances of the service. Very clearly, we think, the negligence was either in the use of appliances, safe when properly used, or in failing to

use a safe appliance supplied by the company. The handling and repairing of such heavy machinery as railway locomotives, with tools and appliances suited to the service, involves, at best, many hazards which the employe assumes by his engagement in the service; and it may not be said that the place where such labor is performed is, in a legal sense, dangerous by reason of such hazards. *Bedford Belt R. W. Co.* v. *Brown*, 142 Ind. 659, and authorities there cited. It would be as difficult to demonstrate that the death of Kerner was in any respect due to the failure to supply proper appliances of the service, or in supplying defective appliances, as to show that the place supplied was dangerous. The plain and unmistakable cause of the injury and death of Kerner was the misuse of appliances, so far as the evidence discloses, proper in every way.

Does the fact that Marion, who held the torch while another struck the spring with the iron, make the company liable on the ground that he was a vice principal? There is some quibbling in the arguments as to whether he was of superior rank to the other machinists because he gave directions as to the character of work each machinist should perform from day to day. There is no room for confusion as to when one is a vice principal, and when a fellow servant. It is not determined by rank in the service or the title by which he is known, but it depends upon the particular service in which he is at the time engaged. If that service is in supplying instrumentalities of the service, or the place to perform the service—in short, if he is performing a duty owing by the master to the injured servant, by authority of the master, and does it negligently, or if he negligently omits a duty of the master which he is delegated to perform, his negligence is that of the master. But if he is engaged with the servant injured

in the common service of the master, not involving some duty of the master, he is a fellow servant. *New Pittsburgh, etc., Co.* v. *Peterson*, 136 Ind. 398, and authorities there cited.

It cannot be that the master, when he has supplied a safe place to work, has furnished tools and appliances free from fault, and when he has not been careless in the employment of unskilful servants, is required also to have present, as each act of each servant is performed, some one to warn the servant against the improper use of the appliances furnished. If he is not so required, then it is clear that Marion's failure to suggest the danger from striking the spring with the heavy iron was not the failure of the company, and his failure was that of a fellow servant.

With this conclusion it is not contended that the appellant was entitled to recover. We might, however, suggest the absence of evidence that the decedent, who was a mechanic of years of experience in the line in which all were then engaged, was free from the same negligence claimed against Marion, namely, in not foreseeing the result of striking the spring.

There is no possible view of the case upon the evidence in the record which would have justified a verdict for the appellant, and the circuit court did not err in directing the verdict.

Judgment affirmed.