Rabb, J.
Appellant owns a sand- and gravel-pit from which it ships by carload lots large quantities of sand and gravel. The sand and gravel are taken from the pit and loaded on ears by means of a steam-shovel. While engaged in appellant’s service, in the work of operating said steam-shovel, and loading cars with sand from appellant’s pit, appellee suffered an injury.
This action was brought to recover damages therefor, on the theory that appellant was guilty of negligence proximately causing the injury suffered. Appellant’s demurrer to the complaint was overruled, issues were formed, the cause was tried by a jury, and a verdict was returned and judgment rendered thereon against appellant.
The sufficiency of the complaint to withstand a demurrer is presented by appellant’s assignment of errors. The complaint avers that the steam-shovel used by appellant in its work was fastened to the front of a flat-ear, built for the purpose, having a large crane, which carried an arm, to which was fastened a dipper or scoop, by means of which the sand and gravel were scooped out of the pit and deposited in *447 cars, and which crane worked on a pivot; that the construction of the machine was such that the crane, handle and dipper could be manipulated by a man in charge thereof, in such manner that it would scoop up sand and gravel within a radius of thirty feet of the pivot upon which the crane turned; that, in operating the machine, the gravel and sand were scooped np into the dipper by letting it down into the pit, propelling it forward and upward, by means of steam-power, until the dipper was filled, then raising it and swinging it by means of the crane over to the cars on a track alongside the machine, then dumping the dipper and returning it to be refilled; that the flat-car on which the machine stood rested on a temporary track, which had to he constructed in front of the car as the work progressed, and that those who laid this track worked in the space under the crane and dipper, and could only do their work in the space of time occupied in raising, dumping and returning the dipper; that the necessities of their work required them to work hurriedly, and it was their duty and custom to rush in behind and under the dipper when it was raised, and work while the dipper was being swung over and emptied, and to watch for its return after its contents had been emptied into the ear, and protect themselves from injury by getting out of the way upon its return to be refilled; that the dipper would readily fill at one upward stroke; that the crane and dipper were operated by a man in charge of the steam-shovel, who worked on the forward end of the ear, and who, with appellee and others, was employed by appellant to load the sand and gravel on said cars; that the dipper and handle would weigh five tons, and that it was dangerous for those engaged in extending the track to lower the dipper, after it had been raised in the act of filling, without swinging it around to the car, or without warning such men in time to enable them to get out of the way; that men employed in the work of laying the track became accustomed to the time required to swing the dipper from the pit to the *448 ear, dump it and return, so they could easily govern themselves in their work, and avoid danger from the return of the dipper.
It is further averred that “it happened occasionally, but very rarely, that in entering the dipper in the bank, and pushing it forward to be filled, it did not fill sufficiently,” and the craneman and those operating the machinery of said shovel “were required to let said dipper down and refill it,” without swinging it around to the car and dumping what it contained; that the persons working on the track had no means of knowing whether said dipper was filled or not filled in the first effort, and had no means of knowing when it would be let down to be refilled without swinging it to be dumped, unless warned by defendant; that “it was the duty of defendant, whenever such was the case, to warn them, and that their working place, under the aforesaid circumstances, was highly dangerous and unsafe, unless they were so warned;” that defendant employed plaintiff to assist in laying said track for the steam-shovel, and that he worked continuously at said employment -from March 25, 1906, until May 5, 1906; that defendant instructed him how and when to do said work, but negligently failed and omitted to instruct him that said dipper was liable not to fill at the first stroke, and that it was sometimes necessary to let it down again to fill it completely before swinging it around to the car and dumping it, and that defendant negligently failed to provide anyone to warn plaintiff thereof when said dipper should be so let down without being first swung around to said car and dumped, and that during the time plaintiff worked there, up until the time of his injury, it was never necessary to let down said dipper the second time in order to fill it perfectly before swinging it around to the ear to be dumped; that until plaintiff was injured he did not know that such would be the fact; that on May 5, while he was engaged in discharging the duties of his employment, the defendant raised said dipper in the act of filling it, and *449 then, while plaintiff was performing his said work in said manner, defendant, without warning him, negligently let said dipper* down again, without swinging it around to the ear, as aforesaid, and thereby struck and injured plaintiff.
1. It thus appears that plaintiff suffered the injury complained of by the act of the craneman in letting the dipper down on him while he was engaged in the discharge of the duties of his employment. It is true that the complaint averred that “defendant” let the dipper or shovel down on plaintiff, but the specific averments of the complaint, which are controlling, show that this act was performed by a servant. Two alleged omissions of duty are charged against appellant, as being the proximate cause of the injuries complained of: (1) Failure to instruct appellee of the danger to be apprehended from a second effort io fill the dipper with sand, without dumping the sand into the ear; (2) failure to warn appellee that the dipper was being let down to be refilled.
*159 1. The jurisdiction of a foreign court is always open to inquiry and a court of a sister state is in this respect regarded as foreign. Old Wayne Mut. Life Assn. v. Flynn (1903), 31 Ind. App. 473.
*449 2. 3. The complaint, to withstand a demurrer, must directly aver facts showing a right of action in plaintiff, in such language that a person of common understanding may know what is meant to be charged. Here the foundation of appellee’s ease rests upon an alleged existing danger, out of which danger it is claimed a duty grew owing by appellant to appellee, the neglect of which produced the injury complained of. It is not charged that this danger was one that inhered to appellee’s working-place, or the machinery and appliances furnished by appellant to its servants to work with, but that it arose from the manner in which the work was conducted.
4. *450 5. *449 The law governing the relations of master and servant impose certain duties upon the master. He is bound to exercise reasonable care to provide his servants with a safe place in which to work and safe appliances to work with, to adopt reasonable rules and regulations for *450 tlio conduct of the business, where the nature of the work and the circumstances of the case require it, and to warn his servants of dangers connected with the service, of which the master has knowledge and of which the servant is ignorant. These duties the master cannot delegate, and whoever performs them stands, in that respect, in the master’s place. But there are certain duties the servant owes to the master, and the performance of all such duties the master may delegate to servants, and in the performance of such duties the servant represents not the master but himself. Among other duties which the master may thus delegate to servants is the proper handling of appliances which the master furnishes the servants to work with in the performance of the duties they owe to him. Chicago, etc., R. Co. v. Barker (1908), 169 Ind. 670, 17 L. R. A. (N. S.) 542 and cases cited in notes; Dill v. Marmon (1905), 164 Ind. 507; Indianapolis Terra Cotta Co. v. Wachstetter (1909), 44 Ind. App. 550; St. Louis, etc., R. Co. v. Needham (1894), 63 Fed. 107, 11 C. C. A. 56, 25 L. R. A. 833; Howard v. Denver, etc., R. Co. (1886), 26 Ped. 837.
6. The master has a right to presume that his servants, in the performance of their duties to him, in handling and using the appliances and tools with which they are furnished, will exercise reasonable precaution not to injure each other, and for their careless use of such instruments, by which a fellow servant is injured, the master is not responsible. 1 Labatt, Master and Serv., §30v, and authorities cited. In the case of Chicago, etc., R. Co. v. Barker, supra, the Supreme Court said: “The full test of liability is not the condition of the place nor the machinery at the instant of the injury, but the character of the duty, the negligent performance of which caused the injury. ’ ’ In the ease of Howard v. Denver, etc., R. Co., supra, Justice Brewer, speaking for the court, said: “The true idea is that the place and instruments must in themselves be safe, for this is what the master’s duty fairly compels, and not *451 that the master must see that no negligent handling by an employe of the machinery shall create danger.”
7. It appears from the-eomplaint that the appellee was injured while engaged in the regular duties of his employment at a place where such duties were regularly to be performed; that the injury was not the result of any inherent danger in the place, nor of any defect in the machinery furnished by appellant for appellee to work with, bnt that it resulted from the act of a fellow servant in manipulating a machine in the performance of the work in which they were both engaged for the common master; and, from the facts averred in the complaint, we think the inference fairly arises that appellee’s working place and his position therein at the time of the injury were plainly visible to appellant’s servant operating the dipper.
It is appellee’s theory that appellant is liable for the injury complained of, because it was the duty of appellant to adopt rules and regulations for the conduct of its business that would have protected its servants from such an accident, and that upon the failure of the dipper to fill at the first dip, the letting of it hack for a second effort, without dumping, was a part of appellant’s system of carrying on the work. The facts averred in the complaint, upon which this theory is predicated, are that it happens occasionally, hut very rarely, that in entering the said dipper in the hank, and pushing it forward to he filled, it does not fill sufficiently, and the craneman and those operating the machinery of said steam-shovel are all required to let said dipper down again and refill without swinging it around to the ear and dumping what it contains. By whom these servants are required thus to proceed with their.work is not disclosed. It is not averred that this was done by any direction of the appellant, nor that the appellant had adopted any rule requiring the craneman to operate the dipper in this or any other particular manner. So far as appears from the facts averred in the complaint, the method of operating the dipper *452 —whether it should be dumped at each dip or should not be dumped until it was entirely filled — was left to the discretion of the craneman who operated it, and it affirmatively appears from the description of the machinery and the manner of its operation that it could be dumped as readily when partially filled as when entirely full; so that, notwithstanding the averment that those who operated the crane were required to return the dipper for refilling without first dumping it. in the car, in case of its failing to- fill at the first effort, it appears that the dipper was returned to the pit without dumping simply because the craneman chose to perform the work that way, and not because of any direction or requirement of appellant. Nor do the facts present such a case as required appellant to adopt some rule describing the particular manner in which the craneman should fill and dump the dipper. Appellant could properly leave that detail of the work to the discretion of its servant in charge of the crane and dipper, and had the right to presume that such servant would not suddenly and at some unexpected moment, on some rare and especial occasion, drop the dipper down on the heads of his fellow workmen engaged in their duties immediately under his eye, without notice or warning to them. Nor was appellant bound to stand over his servants while thus engaged at their work in order to warn them of a danger of rare occurrence, and which would arise solely from the manner in which the work was performed.
We are cited by appellee’s learned and industrious counsel to a large number of authorities in support of his contention that appellant owed appellee a duty to warn and instruct him in reference to the danger of injury from the manner in which the craneman operated the dipper, all of which we have carefully examined, and none of which we think are in point in this case. The strongest ease in support of appellee’s contention, to which our attention has been called, is that of Belleville Stone Co. v. Mooney (1897), 61 N. J. L. 253, 39 Atl. 764, 39 L. R. A. 834, which seems not to be in *453 entire harmony with other adjudications along the same line, but, however, the case cited is very easily distinguishable from the case made here. In the ease cited, an employe of a stone-quarry was injured as the result of a blast fired in the quarry in the usual course of the business, for the purpose of loosening the stone, and defendant was held liable for its failure to warn the employe in time to enable him to escape from the falling debris. The firing of the blast to loosen the rock was one of the regular and necessary incidents of the work, and involved a constantly recurring danger to those engaged at work in the quarry. After the fuse that fired the blast was once lighted the explosion was inevitable. It was not under the control of some servant of .the company, and the resulting danger to the workmen was not dependent upon the act of such servant. The blast was bound to explode, and the shattered stone would fall where it listed, and it does not seem unreasonable that in the conduct of a business of this character, involving danger arising, as it naturally would, from the firing of such blasts, the master should be required to make proper provision for warning his employes at work in the quarry in time to enable them to escape injury therefrom, and that his failure to do so, or the failure of the person charged with that duty, would constitute negligence .on his part. But where the danger arises solely from the manner in which a fellow servant operates a tool or machine furnished him to work with, a different question is presented, and such is the question here.
We are cited to numerous cases in which servants have been, by order of the master, taken out of the regular line of their employment, and, without warning, set to work in dangerous places, or with dangerous appliances, of whose dangers they were ignorant. None of these eases apply to the facts here involved. The case of Gould Steel Co. v. Richards (1903), 30 Ind. App. 348, cited by appellee in support of his contention, is to be distinguished from' the case at bar, in that, there, while the injury to the servant occurred through *454 plaintiff’s being struck and injured by a moving crane, and the charge of negligence was predicated upon the act of the master in causing the crane to be set in motion without warning to plaintiff, while he was engaged at work in a place which the movement of the crane rendered dangerous, the movement of the crane was at the direction of the master, not of a fellow servant. Here the movement of the dipper, rendering appellee’s working place dangerous, was the act of the fellow servant, not the master or vice-principal. The case of Gould Steel Co. v. Richards, supra, is governed by the following rule laid down in 1 Labatt, Master and Serv., §209: “No order with respect to change of position of the subject of the work shall be executed without due warning to the employe. This principle is exemplified in a class of eases involving injuries * * * produced by the fact that some heavy object not under the control of some particular servant passes at intervals along certain lines through the space in which a servant is required to work.” See Stewart v. Philadelphia, etc., R. Co. (1889), 8 Houst, (Del.) 450, 19 Atl. 639. The rule could manifestly have no application here, because here, the object passing through the space in which appellee was required to work, and creating the danger, was under the absolute control of a fellow servant, as much so as though it had been a shovel or sledge used in his hands. Under the facts averred, no liability on the part of appellant for the injuries alleged to have been sustained was shown. The demurrer to the complaint should have been sustained.
Judgment reversed, with instructions to sustain the demurrer to the complaint.