# The Lehigh Portland Cement Company *v.* Bass.

### [No. 22,509. Filed December 9, 1913.]

1. **Master and Servant.**—*Injuries to Servant.*—*Safe Place of Work.*—*Assumption of Risk.*—Where an employe was engaged in a stone quarry in which a pile of stone on which he was at work was constantly diminishing, and the position of the stones constantly changing, so as to alter and change the likelihood of stones to fall as the work went forward, all of which such employe knew and appreciated, and the duty of his employment was a part of the very act of changing the pile, and the constantly changing conditions were the usual and ordinary conditions of the operation of the business, he must be held to have assumed the risk incident to his specific employment. p. 548.

2. **Master and Servant.**—*Injuries to Servant.*—*Place of Work.*—*Duty to Inspect.*—Where an employe was engaged in a rock quarry in which a pile of loose rock on which he was at work was constantly diminishing and changing, so as to alter and change the likelihood of stones to fall as the work progressed, and he was familiar with the work and conditions, the master was not guilty of negligence in failing to inspect the place of work; his duty in that regard being no greater than, or different from the duty which the employe owed to himself. p. 548.

3. **Master and Servant.**—*Injuries to Servant.*—*Safe Place of Work.*—*Duty of Master.*—The duty of a master to furnish a reasonably safe place of work, and to use ordinary care to keep it safe, is a qualified one, and does not extend to all the passing risks that may arise from short lived causes, or in the ever changing conditions of the work, of which the servant is as well informed as the master. p. 549.

4. **Master and Servant.**—*Injuries to Servant.*—*Place of Work.*—*Transitory Dangers.*—*Duty of Master.*—The master owes no duty to his servants employed in their usual calling, respecting transitory dangers created by the manner in which the work is being done, unless he knows of the danger in time to warn, and the servant is ignorant of such danger. p. 550.

5. **Master and Servant.**—*Injuries to Servant.*—*Assumption of Risk.*—While it is the duty of the master, and not the servant,

to search for latent defects, the servant assumes the risk as to all patent defects or dangers and as to those of which he has knowledge and appreciates, and which are open to ordinary observation.  p. 551.

6.  MASTER AND SERVANT.—*Injuries to Servant.—Safe Place of Work.*—The master is not an insurer of the safety of the servant's working place, and is not liable for the happening of an accident arising from no known cause.  p. 551.

7.  MASTER AND SERVANT.—*Injuries to Servant.—Verdict.—Answers to Interrogatories.*—In an action for injuries to a servant employed in a rock quarry, where the jury's answers to interrogatories show the injury to have arisen either from the constantly changing conditions of the work, of which plaintiff was fully informed, and which changing conditions he was engaged in producing, or from no known cause, a verdict for plaintiff cannot stand.  p. 552.

From Lawrence Circuit Court; *James B. Wilson,* Judge.

Action by Edward E. Bass against The Lehigh Portland Cement Company.  From a judgment for plaintiff, the defendant appeals.  (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.)  *Reversed.*

*John H. Edwards,* for appellant.
*Brooks & Brooks,* for appellee.

MYERS, J.—Action by appellee against appellant for damages for personal injuries, on account of alleged negligence. The complaint is in one paragraph, and the errors assigned and not waived are, (1) in overruling appellant's demurrer to the complaint, (2) in overruling its motion for judgment *non obstante,* and (3) in overruling its motion for a new trial.  The complaint is quite lengthy, and we shall not set out any more than is necessary to show its material allegations.  It is alleged that appellee was employed as a driller of stone broken from the face of a stone quarry by blasting, and thereby thrown to the floor of the quarry, and broken into various sizes and particles by such blasting, some of the pieces being too large to be loaded on the cars, and too large to be broken up by hammers provided for the car-men to break up stone, so that it might be handled and carted away

to a crusher, where it was ground for cement. That the ledge from which the stone was blasted was 70 feet high, and the explosions would cause the front of the ledge to fall over and down on the floor (of the quarry) in great masses and pieces of stone. When the ledge had been so thrown down it would lie in a rough, jagged surface, not vertical, but sloping back toward the top. That this mass would be composed of loose stones, but of various sizes, from very small pieces to very large masses. In order to transport such stone to the mills it was necessary to break up the larger masses by drilling holes in them, in which explosives were placed, which broke them into smaller pieces, which could be handled. Appellee was employed to drill the holes in these large masses. In order for him to do so it was necessary that he go upon the broken ledge with his drill and stand on and about the mass of stone which was desired to be broken up. These masses were in all parts of the mass thrown down from the ledge, some of them very securely fastened in the ledge; others would not be fastened, but would be in the ledge in such way that they would be likely to break loose and slip from their place, and slip down the ledge, and injure employes working on the ledge. "That the danger and likelihood of such stones falling and slipping from their place could not be determined by an ordinary observation and examination of the same, such as could be made and permitted to be made, and was made by this plaintiff at and before the time of his injuries, and other employes like situated, and working as he worked. That this danger and likelihood of said stone falling and injuring workmen was well known to defendant, and that defendant well knew that plaintiff and others working in the place, and as he worked, could not, and did not know of the likelihood and danger of said stone falling from any observation or examination that could be made while engaged in their service to defendant." That appellant by making inspection of the place, and of said stones, could have known the danger

of the same falling, and by remedying the same or removing such stone prevented any injury to employes and appellee, and it was the duty of appellant to make said inspection, in order that it might exercise reasonable care and diligence in providing a safe place for appellee and others like situated as he to work and perform their service. That all of such duty appellant, at and before the time of appellee's injuries, negligently and carelessly omitted, and wholly failed to perform, whereby appellee met with his injuries. That while in the employ of appellant at drilling as aforesaid appellee was directed and permitted by appellant to work at a place 20 feet above the floor of the ledge in drilling holes in a certain stone there situate, and while performing his duties as such driller a mass of stone weighing several hundred pounds in the ledge above him broke loose and rolled down over and injured him in particulars stated. That the injuries were caused by the negligence of appellant in failing to exercise reasonable care in furnishing appellee a safe place to work and permitting him to work in the unsafe place; in failing to make any sufficient inspection of the place, and of the dangers, and to take any precautions to guard him, or warn him against danger. That appellee did not know that the stones were loose and likely to fall, and appellant did know it, and by the exercise of reasonable care could have known of the danger of the stones falling, and could by the exercise of reasonable care have observed the danger and made the place safe, all of which precautions and duties were negligently omitted.

It is the contention of appellant that the complaint is lacking in direct averment that the place where appellee was at work when injured was unsafe, or that it was a place of danger, and that no facts are pleaded to compel the inference, or presumption, that it was an unsafe place, or a place of danger. In view of our conclusions, it will not be necessary to consider the complaint, for the reason that the answers to the interrogatories disclose no right of recovery, and find

the material facts adversely to the allegations of the complaint, conceding that it states a cause of action within the rule announced in *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99.

It is found by the interrogatories and answers that the stones broken loose from the ledge were thrown to the floor in a heap when first thrown down, about 50 feet high at the ledge, 150 feet long east and west and 40 feet high at the outer edge from the ledge, and extended eastwardly from the ledge 50 feet, and was extended about 100 feet long east and west, when appellee was injured, and were broken down in the usual manner of operation in the quarry; that the stones forming the pile ranged from stone dust to blocks of stone of 75 or more cubic feet, and before any of the mass was removed it ranged from 40 feet in height at the face of the quarry to a foot or less at the floor of the quarry. The work of removal began at the east end of the pile, and progressed toward the ledge, or face of the stone; at the time of the accident employes were engaged in tearing down the pile, using picks, crow-bars, shovels, hammers and drills to do so. That the blast that made the pile was such as was ordinarily used in the quarry, and the pile was made in the ordinary and usual operation; that appellee at the time of the accident was on the eastern slope, 20 feet from the floor of the quarry measuring on the slope of the heap, and there were 20 feet of the slope above him, measuring along the slope, the angle of the slope was 60 degrees throughout the slope above and below where appellee was at work; the floor of the quarry was level. The stones composing the mass above him were not in the situation as they were thrown by the blast which separated them; the stone above him stuck out irregularly from the side; the pile above him was in plain and open view to the top; immediately after the pile was thrown down by the blast appellant set to work to remove it; appellee worked continuously on the pile from the time it was formed and down to the time of the accident, but at

different places on the pile, which places he reached by climbing on the pile from place to place, was thoroughly familiar with formation of the pile and the sizes and shapes of the stones forming it; in the work of tearing down and hauling the stone away some employes were engaged in loading the stone from the pile into small cars drawn by horses on the quarry floor; that some of the stones were too large to be loaded into the cars, and in order to load them it was necessary to break them into smaller pieces, and appellee at the time he was injured was engaged with a hammer drill, driven by compressed air, in drilling into a stone too large to be handled, for the purpose of blasting it into smaller pieces, and had only been using the drill about one minute when the accident occurred. The drill was running; he was alone at that point; he had taken the drill to the point and placed it in position and was doing the work in his own way under general instructions to drill the stone. The men who were loading the stone were called car-men, and were paid so much for each car loaded, and not by the day. The drill-men did not select the stones they should drill; that selection was made by the car-men, who indicated the stone to be drilled, and it was the duty of the driller, which appellee was, to drill the stone pointed out to him by the car-men. The car-men had no right to direct the drill-man how he should do his work, beyond pointing out the stone; one of the car-men pointed out the stone which appellee was drilling when injured; that this car-man was, at the time he pointed out the stone to be drilled, engaged in loading stone from the pile into the cars on the quarry floor; that this man did or said nothing more than to point out the stone and request appellee to drill it; he gave no direction as to how the work should be done; that was on the morning of the injury, which occurred about 11 o'clock a. m.; this man pointed out the stone to be drilled in his capacity as car-man, and in no other; he had no right under his employment to give any directions as to the way appellee should drill the stone; no

one directed appellee what position he should take on the pile, beyond pointing out the stone to be drilled, and no one directed him when he should commence the work of drilling on the stone; he selected his own time to commence the work; appellee had the right to exercise his own judgment, in case a car-man requested him to drill a stone, as to whether he would do so or refuse to do so until ordered to do so by his boss, foreman or superintendent; if a car-man pointed out a stone to be drilled, which, in the judgment of appellee, ought not to be drilled, he had the right to refer the matter to his boss, foreman or superintendent for instructions; under his employment he was required to exercise his own judgment when the car-man pointed out the stone on which he was drilling when he was injured, as to whether that particular stone ought to be drilled; there was a drill-foreman over appellee, whose orders he was bound to obey; the drill-foreman gave no orders as to drilling this stone, and appellee used his own judgment that the stone ought to be drilled, and used his own judgment in taking his position to drill it; the work of appellee and the car-men, including the car-man who pointed out and requested him to drill the stone, had for its common object, purpose and end the tearing down of the pile of stones and hauling them away, and at the time of the injury the car-men, including the car-man who had requested the drilling, appellee and any and all other employes at work on the stone pile, were engaged in tearing down the pile of stones, and removing it; when appellee went to the place where he was injured, he made an examination by eye only of his surroundings to see and ascertain what stones, if any, were likely to fall and injure him. After he began work on the pile, down to the time of the accident, appellee made no examination of the surroundings of the place where he was at work when injured, to ascertain whether any stones were loose or likely to fall; he had very little time to examine his surroundings to see and ascertain whether any stones were loose and likely to fall; he did not

at any time go up to and on the pile above him to look for loose stones likely to fall on him while at work drilling; the parts above him were readily accessible from the place of his work; he knew and appreciated that if stones should fall from the pile against him while at work he would be injured; the stones which struck and injured appellee fell out of the pile above him and rolled against him; he was working with his back to the pile, with his face turned away from it; that at some time prior to the accident appellant made an inspection and examination for stones likely to fall in piles of stone thrown from the ledge by blasts while the piles were being removed, and some time prior to the accident inspected and examined the pile on which appellee was injured, for stones likely to fall; that appellee knew and appreciated at and before the accident, that stones were likely to fall from different parts of the pile in the progress of the work of tearing down and hauling the stone away; that the size of the pile constantly diminished, and the position of the stones and pile constantly changed as the work of tearing down and hauling away progressed, and the work constantly changed and altered the likelihood of stones to fall as the work went forward; that at and before the time of the accident many men were engaged in different places in the work of tearing down the pile of stone on which appellee was injured; that he knew and understood thoroughly, at and before the accident, the method and manner of tearing down the pile, and it was a common thing as the work progressed on the pile on which appellee was working for stones to fall out and roll down the sides of the pile, and that appellee knew and appreciated that fact at and before the accident; that it was conducted in the regular and usual manner.    It is also found that the appearance of the parts of the pile surrounding appellee's place of work at the time of the accident, including the part of the pile above him and his place of work, was not such as to indicate to an ordinarily prudent and careful person sit-

uated as he was, and with the knowledge and experience he had, that stones were in the parts of the pile surrounding his place of work and above him and his place of work, ready and likely to fall from their position and roll down the sides of the pile to his place of work. That appellee did not of his own free choice and volition elect not to go over the pile above him to see if there was danger from falling stone; that there is no evidence how long it would have taken him to do so, or whether he was competent to make an examination; that he did not know that no examination had been made by anyone to ascertain whether there were loose stones likely to fall, and there is no evidence to indicate at and before the accident to a competent inspector, had an inspection been made, that the stones that fell and injured appellee were loose and likely to fall, and no evidence of anything to indicate to any person looking for stones likely to fall that the stones which injured appellee were likely to fall, and no evidence that appellant had any knowledge that the stones which struck appellee were likely to fall; that appellee did not know and appreciate that no inspection had been undertaken by appellant to ascertain whether stones were likely to fall, and that appellee did not know and appreciate that no inspection had been made, or attempted, by appellant for stones likely to fall, and that there was no evidence that the work of tearing away the stone composing the pile caused the stones which injured appellee to fall, and that there is no evidence that the falling of any stone or stones from the ledge had anything to do with the starting and falling of the stones which injured appellee, and that there is no evidence that had appellee gone up and over the part of the pile above him, that he would have discovered the stones that fell, and their likelihood to fall, and thereby have avoided the injury. It will be observed that there are some absolutely inconsistent and contradictory findings by the jury, for example, it is found by interrogatory No. 67 that if a car-man directed a drill-man to drill a particular stone, it was his duty

to do so.    By interrogatories Nos. 81, 82 and 83 it is found that the driller had the right to exercise his own judgment as to whether he would drill a particular stone, or whether it ought to be drilled, and the right to refuse to do so, until ordered by his foreman, boss or superintendent, and it is found by interrogatory No. 107 that he did not go of his own volition, in the face of these and other findings; that he went on request of a car-man.    It is found by interrogatory No. 101 that the appearance of the parts of the pile surrounding appellee's place of work at the time of the accident, including the parts of the pile above him, was not such as to indicate to an ordinarily prudent and careful person situated as appellee was, and with the knowledge and experience he possessed, that stones were in the place surrounding his place of work, and above him and his place of work, that were likely to fall from their position and roll down the sides of the pile to his place of work; and by interrogatory No. 106, that if he had gone up over the parts and looked for stones likely to fall he would not have discovered the stones that fell and their likelihood to fall; and by interrogatory No. 112 that there was no evidence that there was anything to indicate to a competent inspector, had a careful and sufficient inspection been made, that the stones which fell were loose and likely to fall; and by No. 114 that there was nothing to indicate to any person looking for stones likely to fall that the stones which did fall were likely to fall, and that there was no evidence that defendant had any knowledge that the stones which injured appellee were likely to fall; and it is found that appellant inspected and examined the pile on which appellee was injured prior to the accident, for stones likely to fall; but that appellee did not know, and did not appreciate that *no* examination had been made.    It is found that stones from the pile above him fell and rolled on him, and that there was no evidence that stones which fell, and those which struck appellee, fell from the ledge, or that falling stones from the ledge had anything to

do with starting the stones which fell on appellee, yet it is found that appellee at and before the accident knew and appreciated that stones were likely to fall from different parts, as the work of tearing down the pile progressed. This last answer, that appellee knew and appreciated that stones were likely to fall, is not inconsistent with the finding that he could not have discovered stones likely to fall if he had made inspection, for the reason that it is shown that the work was constantly changing the face of the pile, and the bearing of parts to each other.

Taking the complaint and answer, and disregarding the conflicting answers, the case stands thus, that the size of the pile was constantly diminishing and the position of the stones constantly changing, and changing and altering the likelihood of stones to fall as the work went forward; that the work of removing the pile which produced these results was going on continuously at and during the time appellee's duty required him to do his work in connection with and as a part of the very act of changing the pile, all of which he knew and appreciated, and in which he was engaged when injured. If any duty of inspection by appellant was owed appellee under the peculiar conditions, it was no greater or different from the duty of appellee himself to inspect for his own protection, and that of his fellow employes. If he could not have discovered the likelihood of the stones to fall, owing to the constantly changing face of the heap, which constantly altered the positions and likelihood of the stones to fall, what inspection by appellant could have been of any avail? The condition at one moment was not the condition of the next moment. Appellee knew as much as anyone could know, at any given time, for the next move in the act of removing stone changed the conditions entirely. The work itself was one of constantly changing conditions, due not only to the efforts of others, but of appellee himself. It is not a case of a safe place to work or one to be kept safe, or of inspection,

or failure to inspect, but of guarding one's safety in an ever-changing condition as the work progressed, or in the course of the work for which he was employed. All these things were as familiar to appellee as they could be to anyone, and he accepted the employment under these conditions, as a part of the condition of his work and employment; they were the usual and ordinary conditions of the operation of the business, in the ordinary and usual manner, and he must be held to have assumed the risk incident to his specific employment in a work carried on in the usual and ordinary manner, and with which he was familiar when he was employed.

The finding that appellee knew and appreciated that stones were likely to fall from the different parts of the pile as the work progressed, coupled with the findings as to the constantly changing conditions of the pile, and the positions of stones therein, and constantly changing and altering the likelihood of the stones falling, when taken with the allegation of the complaint that it was his duty to work under his employment under these conditions, completely nullify the allegations of the complaint of his want of knowledge of the likelihood of the stones falling, and of the danger (if the allegations amount to that), and it was an absolutely essential allegation to negative the assumption of risk.

The duty to furnish a reasonably safe place to work and to use ordinary care to keep it safe, or as to directing and permitting work in an unsafe place, is a qualified duty.

3. It does not extend to all the passing risks that may arise from short-lived causes, or such as arise in ever-changing conditions of the safety of the work, in the ordinary and usual conditions of the work of which the servant is as well informed as the master, or the danger is open and obvious or can be discovered by the use of ordinary care, or under circumstances which impose on him the duty of making safe or he is engaged in making safe the place where he works, or in respect to the details of the work or where the results are the ordinary incidents of the work, or transitory

perils which the execution of the work occasions or which do not arise from defects in the condition of the ways, works, plant, tools or machinery. *Cleveland, etc., R. Co.* v. *Perkins* (1908), 171 Ind. 307, 86 N. E. 405; *Haskell & Barker Car Co.* v. *Przezdziankowski* (1908), 170 Ind. 1, 83 N. E. 626, 14 L. R. A. (N. S.) 972, 127 Am. St. 352; *Fort Wayne Iron, etc., Co.* v. *Parsell* (1907), 168 Ind. 223, 79 N. E. 439; *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 80 N. E. 529; *McElwaine-Richards Co.* v. *Wall* (1906), 166 Ind. 267, 76 N. E. 408; *Dill* v. *Marmon* (1905), 164 Ind. 507, 73 N. E. 67, 69 L. R. A. 163; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 68 N. E. 262, 63 L. R. A. 460; *City of Fort Wayne* v. *Christie* (1901), 156 Ind. 172, 59 N. E. 385; *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280, 66 N. E. 886; *Hodges* v. *Standard Wheel Co.* (1899), 152 Ind. 680, 52 N. E. 391, 54 N. E. 383; *Kerner* v. *Baltimore, etc., R. Co.* (1897), 149 Ind. 21, 48 N. E. 364; *Diamond Plate Glass Co.* v. *DeHority* (1896), 143 Ind. 381, 40 N. E. 681; *Wolf* v. *Big Creek Stone Co.* (1897), 148 Ind. 317, 47 N. E. 664; *Louisville, etc., R. Co.* v. *Kemper* (1897), 147 Ind. 561, 47 N. E. 214; *Neutz* v. *Jackson Hill Coal, etc., Co.* (1894), 139 Ind. 411, 38 N. E. 324, 39 N. E. 147; *Lake Erie, etc., R. Co.* v. *Stick* (1895), 143 Ind. 449, 41 N. E. 365; *Day* v. *Cleveland, etc., R. Co.* (1893), 137 Ind. 206, 36 N. E. 854; *New Pittsburgh Coal, etc., Co.* v. *Peterson* (1894), 136 Ind. 398, 35 N. E. 7, 43 Am. St. 327; *Brazil Block Coal Co.* v. *Hoodlet* (1891), 129 Ind. 327, 27 N. E. 741; *Cleveland, etc., R. Co.* v. *Parker* (1900), 154 Ind. 153, 56 N. E. 86; *Whitcomb* v. *Standard Oil Co.* (1899), 153 Ind. 513, 55 N. E. 440.

The master owes no duty to his servants employed in their usual calling respecting transitory dangers created by the manner in which the work is being done by himself 4. or other servants, unless the master knows of the danger in time to warn, and the servant is ignorant of the dangers. *Chicago, etc., R. Co.* v. *Barker* (1908), 169 Ind. 670, 83 N. E. 369, 17 L. R. A. (N. S.) 542; *Dill* v. *Mar-*

*mon, supra; Indianapolis Terra Cotta Co.* v. *Wachstetter* (1909), 44 Ind. App. 550, 88 N. E. 853; *Cleveland, etc., R. Co.* v. *Perkins, supra; Fort Wayne Iron, etc., Co.* v. *Parsell* (1912), 49 Ind. App. 565, 94 N. E. 770; *Knickerbocker Ice Co.* v. *Smith* (1910), 45 Ind. App. 445, 91 N. E. 28.

Disregarding the complaint and findings as to inspection, it is found that inspection would not have benefited appellee, and it is found that there is no evidence that inspection by appellant would have been of any consequence. This condition of the record must be taken in consideration with the other findings, showing the constantly changing conditions of the mass of stone, and of the likelihood of their falling, of which appellee was informed as fully as appellant, as showing that inspection would have been and was futile to avert the result. Under these conditions of appellee's employment and work, under any state of the evidence, under the allegations of the complaint, it cannot be even inferred that there was a failure of duty in inspection, or in precautions to guard or warn appellee of the danger.

It is urged that appellee was under no obligation to search for latent defects; that that is the master's duty. That is true but a servant does assume the risk as to all patent defects or dangers and as to those of which he has knowledge, and which he appreciates and of those open to ordinary observation, and it would be difficult to conceive more patent defects and open danger than this record presents. *Baltimore, etc., R. Co.* v. *Roberts* (1903), 161 Ind. 1, 67 N. E. 530; *Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290, 76 N. E. 1060; *Fort Wayne Iron, etc., Co.* v. *Parsell* (1907), 168 Ind. 223, 79 N. E. 439; *Mitchell Lime Co.* v. *Nickless* (1909), 44 Ind. App. 197, 85 N. E. 728.

The master is not an insurer of the safety of the servant's working place, and is not liable for the happening of an accident arising from no known cause. *Mitchell Lime Co.* v. *Nickless, supra.*

The findings show the injury to have arisen either from the cause of the changing work and conditions, of which appellee was fully informed, which changing condition of work, and subject of the work, he was employed to assist in producing, or from no known cause; and that there was no evidence that appellant had any notice that the particular stones were loose or likely to fall, or that an inspection would have so disclosed, disregarding the conflicting findings as to whether an inspection had or had not been made by appellee, one of which is directly that it had, and the others are that appellee did not know or appreciate that no inspection had been made. The answers are in irreconciliable conflict with the general verdict upon any supposable state of the evidence, unless we should say that appellant was bound to insure appellee's safety in this place, and the findings show in direct conflict with the allegations of the complaint, that he did not know of the conditions of danger; that he did not know and appreciate them.

The finding that there was "no evidence to indicate to a competent inspector  *  *  *  making a careful and sufficient inspection  *  *  *  that the stones which injured plaintiff were loose and likely to fall," and "no evidence" that there was anything to indicate to any person looking for stones likely to fall, and "no evidence" that appellant had any knowledge of their likelihood to fall, must be taken with the other findings, which show that this was due to the constantly changing size of the pile, and the position of the stones in the pile, and their constant likelihood of being disturbed and falling, and that this was all a matter of observation, knowledge and appreciation on the part of appellee, and that his contract of employment was to work under these conditions, for which he was presumably paid.

The judgment is reversed, with instructions to the court below to sustain the motion of appellant for judgment on the answers to the interrogatories, and to enter judgment accordingly.

NOTE.—Reported in 103 N. E. 483. See, also, under (1) 26 Cyc.
1185; (2) 26 Cyc. 1136; (3) 26 Cyc. 1101; (4) 26 Cyc. 1142; (5)
26 Cyc. 1213, 1217; (6) 26 Cyc. 1102; (7) 26 Cyc. 1513. As to the
master's duty with respect to changing conditions of the working
place during progress of work, see 19 L. R. A. (N. S.) 340; 28 L.
R. A. (N. S.) 1267. As to servant's assumption of obvious risks of
hazardous employment, see 1 L. R. A. (N. S.) 272. On the assump-
tion of risk of dangers created by the master's negligence, which
might have been discovered by the exercise of ordinary care on the
part of the servant, see 28 L. R. A. (N. S.) 1250. On the question
of the servant's assumption of risk from latent danger or defect,
see 17 L. R. A. (N. S.) 76. As to the liability of a master for in-
juries to a servant caused by the sliding of rock, earth, etc., in a
trench, quarry, or other excavation, see 7 Ann. Cas. 301; 21 Ann.
Cas. 708.